UNITED STATES of America,
Plaintiff-Appellee,

v.

Constanza D'ALLERMAN, a/k/a Reyna Maria Murcia, Defendant-Appellant.

No. 83–3014.

United States Court of Appeals, Fifth Circuit.

July 18, 1983.

Certiorari Denied Oct. 11, 1983.

See 104 S.Ct. 254.

---

Herbert V. Larson, Jr., New Orleans, La., for defendant-appellant.

John P. Volz, U.S. Atty., Robert T. Myers, Harry W. McSherry, Asst. U.S. Attys., New Orleans, La., for plaintiff-appellee.

Before CLARK, Chief Judge, GEE and POLITZ, Circuit Judges.

PER CURIAM:

This appeal evolves from a jury verdict finding appellant guilty of the importation of cocaine hydrochloride, 21 U.S.C. § 952(a), and possession of cocaine hydrochloride with intent to distribute, 21 U.S.C. § 960(a)(1). The present case is somewhat novel in that appellant claims that her Fourth Amendment rights were violated by virtue of an unconsented X-ray examination of her abdomen, an issue of first im-

pression within this circuit. Prior to submitting the present case to the jury, the district court determined that appellant had voluntarily consented to the examination and therefore the evidence of the cocaine was admissible. On appeal, appellant challenges this finding as well as contending that custom officials lacked reasonable suspicion to conduct this type of search in light of its degree of intrusiveness. Concluding that appellant voluntarily consented to the examination, we affirm the district court's judgment.

## FACTUAL BACKGROUND

The facts of the present case are largely undisputed. In mid-September of 1982, D'Allerman, a citizen of Colombia, arrived at the New Orleans International Airport on a flight originating in Paraguay. The flight had intermediate stops in Bolivia, Peru, Colombia, and Panama with a final destination of Houston, Texas. After clearing immigration, appellant was directed to the inspection counter of customs. Because D'Allerman indicated that she could not speak English, she was referred to a secondary inspection station. The secondary station is designed to relieve congestion at the primary stations by handling those passengers who require more than routine questioning or who do not speak English. At this secondary station appellant was asked a series of routine questions concerning her travel plans and reasons for entering the country. D'Allerman's answers were found to be extremely similar to the answers from two other persons on board her flight. This suspicion was compounded by the fact that all three had boarded the flight in Bogota, Colombia. More, the custom official discovered that each of the three had almost exactly $2,000 in United States currency, each was going to Houston, each said she was staying at the Holiday Inn, each ticket had been paid for in cash, and each of the tickets had a 30-day restriction. Although their answers were strikingly similar, each claimed to be traveling alone. The custom official conducting this interview notified his supervisor that he believed further examination warranted.

The supervisor, Chief Inspector Vaughan, was called at his home and arrived at the airport a short time later. Upon his arrival, Vaughan spoke to all of the inspectors who were involved in the initial examination and compared the information. After receiving the additional information that D'Allerman's ticket was sequentially numbered with that of a fellow traveler whom she claimed not to know, and that both tickets had been purchased from the same travel agency, Vaughan questioned appellant, in her native Spanish, to verify the information that he had already received. Further questioning elicited contradictory and evasive responses, the essence of which we set forth in the margin.[1] After separately

---

1. For example, Murcia stated she was going to stay in Houston for three days to shop, yet her ticket showed that she was leaving Houston that very day. As a result of questioning of the appellant, examination of the appellant's travel documents, and information received from other inspectors, Inspector Vaughan learned the following:

   1) the appellant claimed to be a Colombian citizen;
   2) she had arrived in the United States from Colombia, a known source country for cocaine;
   3) she had approximately $2,000.00 in cash;
   4) she did not know how much she had paid for her ticket;
   5) she indicated that while her husband, whom she said she was coming to visit, was well off, he needed the money she was bringing;
   6) her passport had been recently validated for a five year period while the passport indicated it could only be revalidated in one year increments;
   7) her passport listed her as a housewife and also as single;
   8) the appellant's itinerary was the same as that of the person [Mejia] with the sequentially numbered ticket;
   9) she was traveling unusually light for the length of time she planned to stay in the United States;
   10) while the appellant's ticket was purchased from the same travel agency as Mejia's, was sequentially numbered with Mejia's, and while she and Mejia had the same itinerary, Murcia claimed not to know Mejia;
   11) while Murcia and Mejia told Orate they were staying at the Holiday Inn in Houston, they told Inspector Vaughan they did

questioning each of the suspected parties, and comparing their stories, a decision was made to ask D'Allerman if an X-ray examination could be taken to determine whether she was carrying drugs within her body.

D'Allerman orally agreed to the examination. At this time she signed a written consent form indicating that consent was voluntary. The form was written in both English and Spanish. Appellant was also informed that the X-ray picture to be taken would be one of the inside of her stomach area. After this explanation, appellant again gave her oral consent.

Appellant, along with the other two individuals who had also consented to the examination, was transported to the East Jefferson Hospital. While at East Jefferson appellant was questioned by medical personnel regarding her health and whether she had undergone X-ray examination before. Her answers indicated that there were no health risks in conducting the examination and X-rays of her abdomen were taken. The X-rays revealed the presence of numerous foreign objects in D'Allerman's abdomen. Appellant was then placed under arrest and transported to another hospital. While under observation, appellant passed 80 balloon-like objects, each containing cocaine hydrochloride. In consequence, appellant was indicted for the importation of that drug and for possession of it with intent to distribute.

Before trial, a motion was filed to suppress the cocaine. After two evidentiary hearings, the district court denied the motion. In so doing, the district court concluded that appellant had voluntarily consented to the X-ray examination. Alternatively, the district court reasoned that the search was reasonable even absent consent. A jury returned a verdict of guilty as to both counts of the indictment. Appellant now appeals.

CONSENT

Because there can be no denial that appellant actually possessed the cocaine in issue, the sole question on appeal is its admissibility. We conclude that because appellant voluntarily consented to an X-ray examination, the fruits of that examination were properly admitted. So doing, we recognize the validity of appellant's argument that consent must be a knowing and intelligent waiver of rights. However, on the present facts the argument is simply without merit.

As a general proposition, "a search conducted pursuant to consent is excepted from the requirements of both probable cause and a warrant." *United States v. Garcia,* 496 F.2d 670, 673 (5th Cir.1974). Because consent implicates the relinquishment of constitutional guarantees, it is incumbent upon the government to demonstrate that consent was free and voluntary "and not simply acquiescence to a claim of lawful authority." *United States v. Horton,* 488 F.2d 374, 380 (5th Cir.1973) (quoting *Bumper v. North Carolina,* 391 U.S. 543, 548–549, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968)). Because the issue of consent is one of fact, *Id.,* the clearly erroneous standard of Rule 52(a) of the Federal Rules of Civil Procedure is applicable. Under that standard we have no hesitation in affirming the trial court's finding that appellant voluntarily submitted to the examination.

At bottom, the issue in this case reflects no more than a credibility choice between witnesses. The government presented evidence that appellant was informed, in her native language of Spanish, of the custom officials' suspicions. She was requested to submit to an X-ray examination, which she did after signing a consent form. Now, appellant argues that her lack

not know where they would be staying and that they did not have reservations;

12) both Murcia and Mejia's answers to this question were exactly the same;

13) the appellant's airline ticket had been purchased from a travel agency;

14) the passport presented by the appellant showed two previous entries into the United States;

15) the appellant was unusually calm;

16) the appellant did not know how much in Colombia currency she had used to exchange for the $2,000.00 in cash.

of education, the fact that she is only 18 years old, and her inability to speak English refutes any conclusion that her consent was knowing and therefore voluntary. We do not agree. While the circumstances cited by appellant are certainly probative on the question whether voluntary consent was given, they are by no means dispositive of it. It appears to us that voluntary consent requires an intellectual understanding of exactly what is being requested and a voluntary acquiescence in light of that understanding. More, such an approach requires an analysis of all the facts and circumstances surrounding the defendant's alleged consent and is not predicated upon a single factor or combination of factors less than the whole. *See Horton, supra.*

Here, the district court chose to believe that appellant voluntarily consented to the examination. It did so after hearing testimony from both her and the government witnesses. That the district court questioned appellant's credibility there can be no doubt:

> I realize that the defendant's testimony may, perhaps, be subject to a contrary interpretation, but considering the contradictory and inconsistent answers of the defendant, the Court finds the testimony of Ms. Bonnie Lemont persuasive and convincing. Indeed, based on my observations of the defendant, both in Court and on the witness stand, and her demeanor as she sat in the courtroom, and also on the witness stand, compels me to the conclusion that the defendant is neither now, nor was she then, as confused or ignorant or vain as the defendant would have the Court believe.

Moreover, an evaluation of appellant's argument reveals that she does not argue that she did not fully understand what was being requested of her; rather, she contends that this court should engage in a presumption against such an understanding. Not surprisingly, appellant neither cites authority nor a cogent legal theory going to support of this novel proposition.

▮ Appellant also contends that her consent was not voluntary because she was neither advised of her Fourth Amendment rights nor given a *Miranda* warning. This argument is without merit. In *Horton, supra,* we addressed a similar argument as follows:

> Moreover, the defendant need not be informed specifically of his Fourth Amendment rights ... nor must the investigating officer state that he will refrain from searching if the defendant refuses to give permission ... Finally, voluntariness is to be determined from all the facts and circumstances surrounding the defendant's alleged consent. *Id.* at 380.

It is equally clear that *Miranda* warnings are not required to validate a consent search. *See United States v. Garcia,* 496 F.2d 670, 673 (5th Cir.1974).

Because we conclude that appellant voluntarily consented to an X-ray examination, we do not reach the novel issue of the degree of suspicion necessary to support an X-ray examination without consent. In addition, because consent was voluntary there can be no question that the evidence of the cocaine was properly admitted. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.