**UNITED STATES of America**

v.

**Barbara Ruth DIXON.**

**No. C–CR–89–158.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

Jan. 22, 1990.

David Alan Graham, Asst. U.S. Atty., for U.S.

Wayne C. Alexander (deceased), and James Williams (substitute atty.), for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on a Memorandum and Recommendation (hereinafter "M & R"), filed January 4, 1990, by United States Magistrate Paul B. Taylor.

The M & R is in response to Defendant's Motion to Suppress, filed November 7, 1989. Defendant seeks the suppression of approximately 476 grams of cocaine, a .357 Magnum handgun, $7,947 in U.S. currency, scales, and assorted drug paraphernalia. The items were seized on September 13, 1989 during a search of Defendant's person and a vehicle she was operating. The Magistrate conducted a hearing on December 19, 1989. On January 16, 1990, the Court received Defendant's timely filed objections to the Magistrate's recommendation to the Court that the Motion to Suppress be denied.

The Court is required under 28 U.S.C. § 636 to make a de novo review of those portions of the M & R to which objection is made. Defendant objects generally to the Magistrate's recommendation denying the Motion to Suppress and objects specifically to the following:

(1) The conclusion of law that the police officers had the requisite reasonable suspicion required to stop Defendant;

(2) The factual finding that Defendant consented to the search of the truck; and

(3) The legal conclusion that the officers had probable cause to arrest Defendant after seeing in plain view drug paraphernalia inside the truck.

In making its de novo review, the Court has carefully reviewed the entire record in this case including the Motion to Suppress, the M & R, and the objections filed by Defendant. In addition, the Court listened to the audio tapes from the lengthy hearing and has reviewed the applicable law.

■ As to Defendant's first objection, the Court believes the Magistrate was correct in concluding that the officers had reasonable suspicion to stop Defendant. During the hearing, Defendant's counsel argued that the officers needed independent evidence to corroborate the boyfriend's information that Defendant was engaged in illegal activities.[1] According to Defendant, the officers were required to demonstrate that the boyfriend's information was reliable prior to stopping Defendant.

The Magistrate rejected Defendant's argument and found that the information known to the officers on September 13, 1989 was sufficient to support a reasonable suspicion that Defendant was engaged in a criminal activity—the delivery of cocaine to 2600 Kenhill Street. The M & R notes that after receiving the initial information from the boyfriend that Officer Neal talked to the boyfriend on two other occasions to confirm the accuracy of the information, observed the vehicle described by the boyfriend parked at 2600 Kenhill Street on another occasion, and observed the same vehicle being driven on the night of the arrest by a person that matched the description of the Defendant that the boyfriend had given to Officer Neal.

When all of this information is considered together, the Court believes that the Magistrate's conclusion that reasonable suspicion existed to stop Defendant is supported by case law as well as common sense. *See United States v. Hensley*, 469 U.S. 221, 226, 105 S.Ct. 675, 678, 83 L.Ed.2d 604 (1985) (holding that law enforcement agents may briefly stop an automobile to investigate a reasonable suspicion that criminal activity is afoot); *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) (noting that fourth amendment does not require policeman who lacks the precise level of information to arrest to simply shrug his shoulders and allow a crime to occur); *see generally Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (promulgating the doctrine that brief, investigatory stops based on reasonable suspicion are constitutionally

---

1. The source of the information that Defendant was delivering cocaine at 2600 Kenhill Street was the boyfriend of Ms. Margaret Hayden who resided at 2600 Kenhill Street. At the Government's request, the identity of the boyfriend was not disclosed.

permissible). Defendant argues that the officers should have either allowed Defendant to deliver the drugs to 2600 Kenhill Street or gathered more evidence that the boyfriend's information was accurate. However, the Court believes that the officers had more than a reasonable suspicion that illegal drugs were being delivered to 2600 Kenhill Street by a slightly built black female who drove a two-tone brown Ford Ranger pick-up truck with a camper on the back. It is preposterous to suggest that the Fourth Amendment required the officers to ignore the events that transpired on September 13, 1989. If the Court adopted Defendant's argument, the reasonable suspicion standard as enunciated by the U.S. Supreme Court would be eviscerated. That standard was adopted for exactly the same purpose as presented in this case—to permit the police to investigate suspicious activity despite the lack of probable cause to arrest. *See Hensley*, 469 U.S. at 226, 105 S.Ct. at 678.

■ Although the M & R does not address it, the Court believes the facts of this case indicate Defendant was not initially stopped by the officers. Instead, Defendant testified at the hearing during direct examination that she did not notice the blue lights of the police vehicle until she had parked her truck at 2600 Kenhill Street. It was only after she had stopped and exited her vehicle did she notice the two police vehicles. Therefore, the Court believes the officers' actions did not lead to Defendant's decision to stop. Thus, Defendant's argument that the officers' conduct was unreasonable is less than persuasive.

■ Defendant's second objection is to the factual finding that Defendant consented to the search of the truck. As the M & R notes, all three officers testified at the hearing that Defendant consented to the search. As might be expected, Defendant testified that she withheld her consent. The Magistrate found that the officers were more credible. After listening to the

tapes of the hearing, the Court also believes the officers' version of the events and their demeanor is more credible than Defendant's. Accordingly, the Court affirms the Magistrate's finding that Defendant consented to the search of the truck. The subsequent discovery of contraband justified the seizure of those items and the arrest of Defendant.

■ The third objection by Defendant is that the Magistrate erroneously concluded that the officers had probable cause to arrest Defendant based on the plain view observation of cotton balls and glass tubes located in the back seat of the truck.[2] After the officers saw the items, Defendant was arrested for possession of drug paraphernalia in violation of N.C.G.S. § 90–113.22. Defendant argues that the possession of cotton balls and the glass tubes alone is insufficient to support a probable cause finding that Defendant possessed drug paraphernalia.

The Court agrees with the Magistrate that the officers did have probable cause to arrest Defendant. The North Carolina statute lists as paraphernalia objects that aid in the ingestion of cocaine (the cotton balls) and cocaine vials (the glass tubes). *See* N.C.G.S. § 90–113.21(a)(12). Although legitimate uses exist for cotton balls and glass vials, the experiences of the officers and the proximity of the objects to cocaine demonstrate that the items were being used as drug paraphernalia. See N.C.G.S. § 90–113.21(b).

The officers were in a lawful position to make a plain view observation of the drug paraphernalia. *See Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion) (upholding the seizure of drugs when officer *shined his flashlight into a car* and observed *opaque party balloon*, knotted one inch from tip—a common means employed to package controlled substances) (emphasis added). Thus, the officers were justified to place Defendant under arrest pursuant to N.C.

---

**2.** Officer Hagler testified that in his experience as a police officer, persons who ingest and sell cocaine use cotton balls that are soaked in alcohol to effectuate the combustion of the cocaine. A gas is produced that is then inhaled. Glass tubes are often used to package the cocaine into separate units.

G.S. § 90–113.22 and to seize the paraphernalia upon viewing the items in the truck. The subsequent search of Defendant, her bag, and the rest of the truck was justified as a search incident to arrest. *See New York v. Belton,* 453 U.S. 454, 462, 101 S.Ct. 2860, 2865, 69 L.Ed.2d 768 (1981); *United States v. Robinson,* 414 U.S. 218, 236, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973).

■ The Court also believes that the officers had probable cause to place Defendant under arrest prior to observing the drug paraphernalia in plain view. Shortly after exiting her vehicle, Defendant responded to the officers' request that she produce a driver's license. Defendant testified at the hearing that she did not have a driver's license on the evening she was arrested. Hence, the officers could have arrested her at that point for driving without being licensed by the North Carolina Department of Motor Vehicles in violation of N.C.G.S. § 20–7. Therefore, the subsequent seizure of contraband was alternatively justified as a search incident to the arrest of Defendant for violation of N.C. G.S. § 20–7.

In summary, the Court believes that the stop of Defendant, the subsequent search of the truck and Defendant's person, the seizure of the aforementioned items, and the arrest of Defendant was justified under the Fourth Amendment. Therefore, the Court affirms the M & R in its entirety.

NOW, THEREFORE, IT IS ORDERED that the M & R be, and hereby is, AFFIRMED and ADOPTED.

IT IS FURTHER ORDERED that Defendant's Motion to Suppress be DENIED.

### MEMORANDUM & RECOMMENDATION

PAUL B. TAYLOR, United States Magistrate.

THIS MATTER is before the undersigned Magistrate on reference from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) to consider a motion to suppress filed by Defendant Barbara Ruth Dixon. On December 19, 1989, the undersigned conducted a hearing to receive evidence and arguments on this motion. Having fully considered the testimony and arguments presented at the hearing, as well as the pertinent legal authorities, the undersigned herewith enters the following findings of fact, conclusions of law and recommendation.

### I. FINDINGS OF FACT

Sergeant Whit Neal of the Charlotte Police Department testified that on July 29, 1989, he responded to a domestic call at 2600 Kenhill Street. As the domestic dispute report was being prepared by other officers, Sgt. Neal observed Margaret Hayden on the couch in what appeared to be a drug-induced state. Her eyes were rolled back, her speech was slurred and slow and she was unable to carry on a conversation. This woman's boyfriend[1] told Officer Neal that the woman was under the influence of cocaine and then showed the officer around the house. Throughout the house, Officer Neal observed 75 to 100 crack cocaine smoking containers, along with scales that had white powder on them, numerous "Baggie" corners which Officer Neal recognized as being used to package cocaine, along with numerous small glass tubes. Officer Neal testified that in his experience as a police officer, he recognized all of these materials as cocaine paraphernalia. The boyfriend told Officer Neal that his girlfriend would get cocaine from a small black female by the name of Barbara Dixon. The boyfriend also described the car Ms. Dixon would use to deliver the cocaine as a two-tone brown Ford Ranger pick-up with camper on the back, and stated that Ms. Dixon would carry cocaine and money in separate bags. The boyfriend told Officer Neal that he wanted the police to catch Ms. Dixon so that he could get his girlfriend off drugs, and that he would call Officer Neal if he had any further information.

---

1. At the government' s request, throughout the evidentiary hearing this person was never identified by name, and was referred to simply as "the boyfriend."

A couple of days after this incident, Officer Neal drove by the 2600 Kenhill Street address to look for the vehicle described by the boyfriend. At this time, Office Neal noticed a two-tone brown Ford Ranger pick-up with a camper in the driveway at 2600 Kenhill Street and took down the license number. After running the license number through the police computers, Officer Neal discovered that the truck was not registered to Ms. Dixon.

Approximately ten days after the July 29th incident, the boyfriend called Officer Neal and identified himself. Officer Neal immediately recognized the voice and the name as the man he had interviewed at the 2600 Kenhill Street address. The boyfriend reiterated the same facts about Dixon and the truck and informed Officer Neal that Ms. Dixon was still delivering cocaine to his girlfriend. The boyfriend called Officer Neal again during the week of August 17 and related the same facts—that is, that Ms. Dixon was still delivering cocaine to his girlfriend. Officer Neal told several of his fellow officers to be on the lookout for the truck described by the boyfriend and told them about the cocaine deliveries. He also indicated that the driver of the truck would be a black female who was short and slender in stature.

On September 13, 1989, at approximately 9:45 p.m., Officer Neal responded to a call on Craddock Avenue. After investigating this call, Officer Neal and Officer Lewis returned to their patrol cars at approximately 10:00 p.m. At this time, Officer Hagler, who was also parked on Craddock Avenue near the two police cars occupied by Officers Neal and Lewis, informed the other officers by radio that the truck being sought by Officer Neal had just passed the parked patrol cars. The three officers followed the truck at a distance until it pulled onto the yard in front of 2600 Kenhill Street, at which time one of the patrol cars pulled up behind the truck and another pulled up beside it.

The Defendant, Barbara Ruth Dixon, was driving the truck and stepped out of the vehicle as the officers pulled up. Officer Hagler approached the Defendant and asked her for her license and registration. The Defendant responded by asking why she had been stopped. Officer Hagler informed her that he had information she was delivering cocaine and that he would like to see her license and registration. Officer Hagler also asked if he could search the truck, to which the Defendant responded that she didn't mind. At this time Officer Neal looked into the window of the truck and saw in plain view a paper bag containing cotton balls and glass vials, which he immediately recognized to be paraphernalia used for smoking crack cocaine. After a further search of the truck, the Defendant, and the Defendant's handbag, the officers found 476 grams of cocaine, $7,947.00 in cash, and additional drug paraphernalia.

On cross-examination, Officer Neal testified that he was familiar with the procedure for obtaining a search warrant but that he did not obtain a warrant to search the truck. Officer Neal further stated that he did not advise the Defendant of her *Miranda* rights or of her right to refuse the search of the truck, nor did he ask the Defendant to sign a written consent form for the search of the truck. Officer Neal further testified that he personally heard the Defendant verbally consent to Officer Hagler's request to search the truck and that he would not have searched the truck without first having obtained the Defendant's consent.

Officer Mark Hagler of the Charlotte Police Department also testified at the hearing. Officer Hagler stated that after responding to a call on Craddock Avenue on September 13, 1989, he observed a Ford Ranger pick-up matching the truck description previously given to him by Officer Neal drive past the parked patrol cars. Officer Hagler further recognized the driver as being a black female. Upon seeing the truck, Officer Hagler informed Officers Neal and Lewis that the truck they were looking for had just driven past. The officers then followed the truck until it arrived at the 2600 Kenhill Street address. As soon as the truck pulled into the yard of 2600 Kenhill, Officer Hagler turned on the blue light on his patrol car. The Defendant

stepped out of the truck holding a handbag. At this time, Officer Hagler asked her for a license and registration and the Defendant asked why she had been stopped. Officer Hagler informed the Defendant that he had reason to believe she was transporting drugs. The Defendant then stated she didn't know what was in the vehicle. Officer Hagler then asked the Defendant if she minded if they search the truck, to which the Defendant said, "No." At this time, Officer Neal shined a light into the truck and saw in plain view the cotton balls and glass tubes behind the seat. Officer Hagler recognized these objects to be drug paraphernalia and arrested the Defendant for possession of drug paraphernalia. After arresting the Defendant, he patted her down briefly for weapons and removed glass pipes, also drug paraphernalia, from her pockets. Officer Hagler then took the Defendant's handbag away from her and placed her in the patrol car. Upon examination of the handbag, Officer Hagler found several bags of white powder. Because the white powder appeared to be cocaine, and because of the amount involved, Officer Hagler decided that he should perform a more thorough search of the Defendant. He asked her to step out of the car and, after searching her again, found a .357 Magnum revolver in the crotch area of her pants. Upon further examination of the truck, the officers found additional drug paraphernalia used for smoking cocaine, including test tubes, glass smoking pipes, and copper screening material.

Officer H.W. Lewis of the Charlotte Police Department testified briefly that he arrived at the scene after the Defendant was placed under arrest and did not hear any of the conversation that occurred before that point.

The Defendant, Barbara Ruth Dixon, testified that she drove past several police cars on Craddock Avenue on September 13, 1989 and noticed that they began to follow her. After she arrived at the Kenhill Street address, one of the officers pulled beside her and turned his blue light on. Another police car pulled in front of her. Although she got out of the truck, she stated that she felt compelled to remain where she was. When she asked why she was stopped, the officer informed her that he was just performing a routine check. The Defendant stated that she produced her registration but informed the officer that she did not have her license with her. At no time did the officer inform her of her *Miranda* rights. The Defendant testified that the officer then asked her for permission to search the truck, to which the Defendant responded that he could not search the truck because it was not hers and he could not search it without the permission of the owner. At this time, the Defendant noticed that one of the other officers was shining his light into the back of the vehicle and looking in anyway.

At no time did the Defendant ever consent to a search of the vehicle, her person, or her effects.

On cross-examination, the Defendant conceded that she did not own a driver's license.

## II. CONCLUSIONS OF LAW

By this motion to suppress, the defendant argues that (a) the officers did not have a reasonable suspicion to justify a forcible stop of her vehicle and person; (b) the officers failed to advise her of her *Miranda* rights before questioning her or searching the truck; and (c) the officers searched the truck without her consent.

### A. Reasonable Suspicion

The Fourth Amendment to the Constitution of the United States provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." "This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs." *Terry v. Ohio*, 392 U.S. 1, 8–9, 88 S.Ct. 1868, 1872–73, 20 L.Ed.2d 889 (1968). The ultimate question in this case is whether, in light of all the surrounding circumstances, the defendant's "right to personal

security was violated by an unreasonable search and seizure." *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968).

In *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), the Supreme Court observed that "consistent with the Fourth Amendment, police may stop persons in the absence of probable cause under limited circumstances," and that "law enforcement agents may briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity." 469 U.S. at 226, 105 S.Ct. at 678.

In the present case, having seen on July 29, 1989 a person under the influence of drugs and substantial quantities of drug paraphernalia, Officer Neal had personal knowledge of illegal drug use at the 2600 Kenhill Street address. In addition to this information, Officer Neal was aware, through the boyfriend, that Barbara Dixon, a black female of small stature, was the source of the cocaine being delivered to the Kenhill street address, that she made these deliveries in a two-tone brown Ford Ranger pick-up truck with a camper on the back, and that she had been making these deliveries on a regular basis, with the last reported delivery occurring on August 17, 1989. Officer Neal had further personally seen the two-tone brown Ford Ranger pick-up truck with a camper on the back parked in the driveway of 2600 Kenhill Street just a few days after July 29.

On the night of September 13, the officers observed a black female operating a Ford Ranger pick-up truck with a camper on the back in the vicinity of Kenhill Street, and, after following it at a distance, observed the truck pull into the yard at 2600 Kenhill Street.

As Officers Neal and Hagler both conceded, the above information was insufficient to support probable cause for the arrest of the defendant or the issuance of a search warrant. However, the lack of probable cause does not equate to the absence of a reasonable suspicion that crime is afoot. *See e.g., Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1923, 32

L.Ed.2d 612 (1972). When viewed under the totality of the circumstances, the information known to the officers on September 13 was sufficient to support a reasonable suspicion that the defendant was engaged in criminal activity—the delivery of cocaine to the 2600 Kenhill Street address. Once the officers developed a reasonable suspicion that a crime had been or was being committed, they were entitled to conduct a limited *Terry* stop for the purpose of obtaining the identity of the driver, the registration of the truck, and any other information which they could obtain by limited questioning or consensual search. Accordingly, the undersigned finds that the officers' stop of the defendant on the night of September 13 was lawful.

### B.  Miranda Warnings

The defendant next argues that the officers failed to advise her of her *Miranda* rights before questioning her or searching the truck. There is no requirement that *Miranda* warnings be given prior to obtaining consent for a search even where a defendant is in custody at the time his consent is sought by law enforcement officers. *United States v. D'Allerman*, 712 F.2d 100, 104 (5th Cir.), *cert. denied*, 464 U.S. 899, 104 S.Ct. 254, 78 L.Ed.2d 240 (1983) ("It is equally clear that *Miranda* warnings are not required to validate a consent search."); *United States v. Ritter*, 752 F.2d 435, 439 (9th Cir.1985) ("The absence of *Miranda* warnings is not ... dispositive of whether an individual voluntarily consented to a search."); *Hubbard v. Jeffes*, 653 F.2d 99, 103 (3rd Cir.1981) ("The absence of *Miranda* warnings does not vitiate consent....."). *Accord, United States v. Dancy*, 861 F.2d 77 (5th Cir.1988). Whether *Miranda* warnings have been given is but one consideration in determining whether consent has been given voluntarily. *United States v. Gentry*, 839 F.2d 1065, 1069 (5th Cir.1988).

Consequently, the mere fact that *Miranda* warnings were not given does not, by itself, nullify the warrantless search of the vehicle or otherwise invalidate Petitioner's consent for that search.

**1120**

### C. Consent to Search

In her final argument, the defendant submits her own testimony that she did not give the officers permission to search the truck. This issue presents solely a question of fact which must be determined by a credibility resolution between two contradictory versions in the testimony. After carefully considering the demeanor and testimony of each of the witnesses who testified at the evidentiary hearing, the undersigned finds as fact that the testimony of Officers Neal and Hagler—that the defendant consented to a search of the truck—is the more credible version of events and that the defendant did in fact consent to a search of the truck.

After the officers obtained the defendant's consent, they were entitled to search the truck, and upon finding drug paraphernalia, had probable cause to arrest the defendant for the unlawful possession of such items in violation of N.C.G.S. § 90–113.22. Once the defendant was placed under arrest, she was subject to a search incident to that arrest of her person, *United States v. Robinson*, 414 U.S. 218, 236, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973), and her handbag, *New York v. Belton*, 453 U.S. 454, 462, 101 S.Ct. 2860, 2865, 69 L.Ed.2d 768 (1981); *United States v. Johnson*, 495 F.2d 378, 381–82 (4th Cir.), *cert. denied*, 419 U.S. 860, 95 S.Ct. 111, 42 L.Ed.2d 95 (1974). *See also* ALR 4th 771, 783–85. Accordingly, the cocaine and gun found during these searches were lawfully seized.

### III. RECOMMENDATION

Wherefore, on the basis of the foregoing, the undersigned Magistrate respectfully recommends that the Defendant's motion to suppress be *denied*.

### IV. NOTICE OF APPEAL RIGHTS

Counsel are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Failure to file objections to this Memorandum with the district court will preclude counsel from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.), *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

This 4th day of January, 1990.