**The UNITED STATES of America, Plaintiff–Appellee,**

v.

**Willie Lee DANCY, Defendant–Appellant.**

**No. 88–1240**

**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Oct. 31, 1988.

Denis E. McGuinness, Lubbock, Tex., for defendant-appellant.

Steven M. Sucsy, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Lubbock, Tex., for plaintiff-appellee.

Before REAVLEY, POLITZ, and JONES, Circuit Judges.

PER CURIAM:

Appellant raises numerous challenges to his conviction for knowing possession, as a felon, of a firearm. 18 U.S.C. §§ 922(g), 924(a)(1)(B). He was sentenced to a term of five years. We affirm.

## I. Evidence of a Prior Felony.

Title 18, section 922(g)(1) prohibits a person "convicted ... of a crime punishable by imprisonment for a period exceeding one year" from possessing a firearm. Whether prior criminal proceedings resulted in a "conviction" depends on the law of the jurisdiction that conducted them. 18 U.S.C. § 921(a)(20). Here, in related arguments, Dancy contends that (1) the Government offered no evidence to explain the meaning of "conviction" under California law; and (2) the district court erred in admitting his California "pen packet" to evidence a prior conviction. The latter argument is addressed first.

The Government offered Dancy's California pen (penitentiary) packet, a file prepared by the California Department of Corrections (CDC) that includes copies of a criminal judgment and Dancy's CDC fingerprint card. A CDC official certified the documents to be copies of originals in her legal custody; a judge certified that the official had legal custody of the documents. On appeal Dancy raises authentication and hearsay objections to the pen packet documents.

■ Under Rule 902(4), Fed.R.Evid., a "copy of an official record or report ... *or* of a document authorized by law to be recorded or filed and actually recorded or filed in a public office" is self-authenticating if certified by the legal custodian of the record. Fed.R.Evid. 902(4) (emphasis added). Dancy apparently does not dispute that the pen packet documents are copies of CDC "official records"; rather, he argues that there is "no showing ... that the records were actually recorded or filed *in a public office.*" This argument is meritless; Rule 902(4) does not contemplate that "official records" must be filed or recorded in a public office to be self-authenticating. See *United States v. Darveaux*, 830 F.2d 124, 126 (8th Cir.1987) (Texas Department of Corrections records self-authenticating under Rule 902(4)); *United States v. Stone*, 604 F.2d 922, 924–25 (5th Cir.1979) (Treasury Department disbursement record self-authenticating under Rule 902(4)). The pen packet documents, therefore, were properly authenticated.

■ Dancy additionally argues, however, that both the judgment and fingerprint card were inadmissible because neither fit within the public records exception to the hearsay rule. *See* Fed.R.Evid. 802, 803(8). As to the judgment, Dancy's argument is irrelevant; evidence of a criminal judgment is independently admissible under Fed.R.Evid. 803(22). As to the fingerprint card, Dancy's reliance on *United States v. Cain*, 615 F.2d 380, 381–82 (5th Cir.1980), is misplaced. *Cain* does not hold, as Dancy implies, that Rule 803(8)(B) bars admission of all law enforcement agency records. *See United States v. Quezada*, 754 F.2d 1190, 1193–94 and n. 9 (5th Cir.1985). Rather, the rule excludes records that report the observation or investigation of crimes, not records that merely document routine, unambiguous factual matters. *Id.* at 1194. In this case, the fingerprint card, which contains Dancy's prints, physical description, sentence, and CDC reporting date, is unrelated to a

criminal investigation and admissible under Rule 803(8).[1]

Dancy also contends that the record is silent as to what constitutes a "conviction" under California law. This argument is based on his belief that the judgment introduced as part of the pen packet (1) is not "final"; and (2) fails to evidence that Dancy's sentence could exceed one year.

■The March 15, 1977, judgment recites that in Case A555608 Dancy pleaded guilty to first degree robbery "in violation of Section 211, Penal Code, a felony." It recites further that Dancy was to be "punished by imprisonment in the State Prison for Men for the term prescribed by law pursuant to Section 1168 P.C." Dancy assumes that the judgment is not final because it fixes no determinate sentence but instead orders "[t]he Director of Department of Corrections ... to file a report within 120 days." This assumption is incorrect. Under then-applicable law, a trial court could order a defendant to prison, but it could not fix a definite term. Cal.Penal Code § 1168 (Deering 1977). A judgment was valid if it, like Dancy's, ordered imprisonment "for the term prescribed by law." *See People v. Bruce*, 141 Cal.App.2d 854, 857, 297 P.2d 437 (1956). Section 1168 did permit the trial court, on the recommendation of the CDC Director, to recall its judgment *sua sponte* within 120 days and resentence the defendant. Cal.Penal Code § 1168; see also Cal.Penal Code § 5079 (Deering 1977). This latter provision of § 1168 explains the report referred to in the Dancy judgment.

■ Dancy's additional assertion that the judgment does not demonstrate that his prior conviction was punishable by more than a year in jail, although correct, is irrelevant. Dancy's CDC fingerprint card recites that he entered prison seven days after the date of judgment to begin serving a "5–Life" sentence for "Robb 1st (211 PC)" in Case "# A–555608." The jury therefore had sufficient evidence that the offense carried a potential term in excess of one year.[2]

II. Jury Instructions on Voluntary Consent.

■ Although his precise contentions are unclear, Dancy argues that *Miranda* warnings should be required to validate in-custody consent searches. This Court disagrees. *United States v. D'Allerman*, 712 F.2d 100, 104 (5th Cir.), *cert. denied*, 464 U.S. 899, 104 S.Ct. 254, 78 L.Ed.2d 240 (1983); *United States v. Garcia*, 496 F.2d 670, 673–75 (5th Cir.1974), *cert. denied*, 420 U.S. 960, 95 S.Ct. 1347, 43 L.Ed.2d 436 (1975).

III. Jury Instructions on Knowledge Element.

Title 18, § 922(g)(1) makes it unlawful for a felon

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Section 922(g) is a consolidation of former 18 U.S.C. §§ 922(d), 922(g), 922(h), and 1202 (18 U.S.C. App.). See Firearms Owners' Protection Act, Pub.L. No. 99–308,

---

**1.** Dancy also asserts that the judgment is "unreliable." Citing *Mullican v. United States*, 252 F.2d 398 (5th Cir.1958), he argues that the only reliable record of his prior conviction is the original state court judgment, which he assumes is in the court files. We reject this contention. First, if the judgment is self-authenticating, it logically cannot be "unreliable." Second, Dancy presupposes that there is but one original and that it is in the court files. In fact, four carbons of the judgment were made, and at least three were circulated to state agencies. All are "originals." See Fed.R.Evid. 1001(3) and Notes of Advisory Committee on Proposed Rules. In this case the CDC records custodian certified that

she had originals of the documents submitted; nothing in the records suggests that she did not. This latter fact distinguishes *Mullican:* there, the Bureau of Prisons official who certified the challenged exhibits did not have custody over the originals, and he failed to certify that the copies he possessed were themselves official records or otherwise true copies of the originals. *Mullican*, 252 F.2d at 401–02.

**2.** The "5–Life" notation reflects the then-applicable sentencing range. Cal.Penal Code § 213 (Deering 1977); Cal.Penal Code § 671 (Deering 1977).

§ 102(6)(D), 100 Stat. 449, 452 (1986), and H.R.Rep. No. 99–495, 99 Cong., 2d Sess. 23, reprinted in 1986 U.S.Code Cong. and Ad. News 1327, 1349. Like the provisions it supersedes, § 922(g) contains no element of *mens rea*. Courts instead interpreted its predecessors to require for conviction proof that the defendant knowingly received, transported, or possessed a firearm; the defendant's knowledge of the weapon's interstate nexus or of his felon status was irrelevant. *E.g., United States v. Schmitt*, 748 F.2d 249, 252 (5th Cir.1984), *cert. denied*, 471 U.S. 1104, 105 S.Ct. 2333, 85 L.Ed.2d 850 (1985); *United States v. Thrasher*, 569 F.2d 894, 895 (5th Cir.), *cert. denied*, 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed. 2d 137 (1978); *United States v. Goodie*, 524 F.2d 515, 517–18 (5th Cir.1975), *cert. denied*, 425 U.S. 905, 96 S.Ct. 1497, 47 L.Ed.2d 755 (1976); *United States v. Lupino*, 480 F.2d 720, 723–24 (8th Cir.), *cert. denied*, 414 U.S. 924, 94 S.Ct. 257, 38 L.Ed. 2d 159 (1973). Following this settled law, the district court instructed the jury that it should convict Dancy if it found:

> [1] That [he] was convicted of a felony;
>
> [2] That thereafter he *knowingly* received or possessed or transported a firearm;
>
> [3] That his receipt or possession or transportation of the firearm was in or affecting commerce.

■ However, when Congress amended § 922 in 1986, it also amended 18 U.S.C. § 924, the penalty provision applicable to § 922. See Firearms Owners' Protection Act, Pub.L. No. 99–308, § 104, 100 Stat. 449, 456 (1986). Unlike pre–1986 law, amended § 924 expressly provides that whoever "knowingly" violates § 922(g) is subject to a fine and imprisonment. 18 U.S.C. 924(a)(1)(B). On appeal Dancy first argues, citing *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), that, because of the amendment to § 924, a conviction under § 922(g) now requires proof that the defendant knew not only that he possessed a firearm but that it had an interstate nexus and that he was a felon.

In *Liparota* the Supreme Court addressed the mental state necessary to violate 7 U.S.C. § 2204(b)(1), which provides that "whoever *knowingly* uses, transfers, acquires, alters, or possesses [food stamps] or authorization cards *in any manner not authorized* by [the Food Stamp Act] or the regulations issued pursuant to the [Act]" is subject to a fine and imprisonment. 7 U.S.C. § 2024(b)(1) (emphasis added). In holding that § 2024(b)(1) requires proof that the defendant specifically knew that his conduct was unauthorized, the Court reasoned that "[a]bsent indication of contrary purpose in the language or legislative history of the statute," it must interpret the ambiguous statute in favor of lenity. 471 U.S. at 423–27, 105 S.Ct. at 2086–89.

Rather than being helpful to Dancy, *Liparota* forecloses the result he argues for in this case. It is clear from the legislative history of amended § 924(a)(1)(B) that Congress intended to incorporate former law when it expressly introduced the knowledge element. *See* H.R.Rep. No. 99–495, 99 Cong., 2d Sess. 25–26, *reprinted in* 1986 U.S.Code Cong. and Ad.News 1327, 1351–52 ("Case law interpreting the criminal provisions of the Gun Control Act have required that the government prove that the defendant's conduct was knowing, but not that the defendant knew that his conduct was in violation of law.... It is the Committee's intent, that unless otherwise specified, the knowing state of mind shall apply to circumstances and results.").[3] Therefore, because the legislative history of amended § 924(a)(1)(B) resolves any ambiguity in its text, the rule of lenity held controlling in *Liparota* has no application here. Accordingly, the district court correctly instructed on the knowledge element

---

**3.** House Report No. 99–945 accompanied the original version of H.R. 4332, the text of which can be found at 132 Cong.Rec. H1672–74 (daily ed. April 9, 1986). Although this first draft of H.R. 4332 varies significantly from the adopted version, *compare* 132 Cong.Rec. H1753–57 (daily ed. April 10, 1986), the pertinent sections of each are analogous. *Compare* original H.R. 4332, § 8(2), 132 Cong.R. H1673 (daily ed. April 9, 1986), with final H.R. 4332, § 104(a)(1)(B), 132 Cong.Rec. H1756 (daily ed. April 10, 1986). The analysis of original H.R. 4332 contained in H.R.Rep. 99–945 is therefore instructive in interpreting amended § 924.

of § 922(g). Dancy's first objection to the court's charge is meritless.

 In his second attack on the district court's charge, Dancy contends that it was error to instruct that ignorance of § 922(g) did not excuse its violation. The court charged that:

> The crime charged in the indictment does not require proof that the Defendant knew he was violating the law. Ignorance of the law is not a defense to the violations alleged in the indictment. What is required before the defendant can be convicted of this violation is proof that the Defendant knowingly received, transported or possessed the firearm as alleged in the indictment.

In Dancy's view this instruction "created a conclusive presumption and amounted to a comment on the weight of the evidence."

Dancy's reliance on *United States v. Golitschek*, 808 F.2d 195, 203 (2d Cir.1986), is misplaced. In *Golitschek*, the Second Circuit held that it was error to give a similar instruction in a prosecution for conspiracy and wire fraud, both specific intent crimes when tied to the export of American arms without proper government documentation. *Id.* at 201–03. The court noted that under the government's theory of the case, knowledge of a legal obligation was an element of both offenses; therefore, it was "totally incorrect to say that ignorance of such law is no excuse or that everyone is presumed to know such law. Establishing an element of an offense concerning a requisite state of mind by a presumption relieves the prosecution of its burden of proof, contrary to the requirements of due process." *Id.* at 203. Unlike the crimes charged in *Golitschek*, however, knowledge of a legal obligation is not an element of § 922(g). See H.R.Rep. No. 99–495, 99 Cong., 2d Sess. 26, *reprinted* in 1986 U.S. Code Cong. and Ad.News 1327, 1352 (rejecting Senate proposal that in § 922 cases the government be required to prove that defendant knew that his conduct was in violation of law). *Golitschek* is thus inapposite.

IV. Extraneous Offense Evidence.

 Along with the shotgun, officers found six Darvon capsules in Dancy's trunk; Dancy consequently was charged under Texas law with possession of a controlled substance. Before trial he filed a motion in limine asking that extraneous offense evidence not be elicited without a prior non-jury hearing to determine its relevancy. The court granted the motion. At trial, however, the Government, without the court's approval and over Dancy's objection, elicited testimony that a "controlled substance" was found in the trunk. The court denied Dancy's motion for a mistrial and refused his request for a curative instruction. On appeal Dancy argues that the court should have sustained his objection to the "controlled substance" testimony or granted a mistrial.

The Government makes a strained argument that the "controlled substance" found in the trunk was inextricably intertwined with Dancy's shotgun and was therefore admissible. The trial court, having granted Dancy's motion in limine, would seem to disagree. We need not pass on the issue of admissibility, however, because the error, if any, in admitting two perfunctory testimonial references to a "controlled substance" was harmless. The jury members were not asked to focus on this evidence in closing argument, and the court instructed them to consider only the specific offense alleged in the indictment.

The judgment of conviction is AFFIRMED.