**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 94-20451

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PAUL NORMAN PRIVETT,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Texas

---

(October 18, 1995)

Before REYNALDO G. GARZA, KING AND HIGGINBOTHAM, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Paul Norman Privett appeals his conviction for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1).  Finding no harmful error, we affirm.

I.

BACKGROUND

On August 2, 1993, agents of the Bureau of Alcohol, Tobacco and Firearms ("ATF") learned from Patrick Petrick ("Petrick"), an informant, that Appellant Paul Norman Privett ("Privett") was in possession of a firearm.  ATF agents confirmed that Privett was a felon, and was therefore prohibited from possessing a firearm.

They also learned that he had a suspended driver's license. In order to lure Privett from his residence with the firearm, Petrick—who was cooperating with the ATF—advised Privett that he needed a firearm to commit a robbery. After several conversations, Privett agreed to supply the firearm.

The ATF agents contacted the Texas Department of Public Safety ("DPS") and informed them of the case, identifying Privett, his suspended license, and his criminal history. The DPS then stopped Privett after viewing him operating his vehicle without a license and committing several moving violations. Privett was arrested for driving with a suspended license. An inventory search of the vehicle produced a brown paper bag containing a loaded .25 caliber pistol, a loaded clip, and a box of ammunition.

As Privett was arrested, a private tow truck arrived. Privett asked that his car be towed to his house. Privett had enough money to pay for the tow, and the tow truck driver was amenable to his request. Nevertheless, the DPS officers did not allow the car to be towed to Privett's residence.

On August 26, 1993, Privett was charged in the Southern District of Texas with possession of a firearm and affecting commerce by a felon in violation of 18 U.S.C. § 922(g). Privett filed a motion to suppress the evidence seized as a result of the inventory search. The court denied the motion. On March 16, 1994, a jury found Privett guilty as charged, and on June 14, 1994, he was sentenced to 235 months' imprisonment, ordered to serve a five-year term of supervised release, and ordered to pay fifty dollars

in costs.

## II.

## SUPPRESSION OF THE EVIDENCE

Privett contends that the district court erred in denying his motion to suppress the gun found pursuant to an inventory search. We review the district court's determination that the search was reasonable *de novo*. *United States v. Seals*, 987 F.2d 1102, 1106 (5th Cir.), *cert. denied*, 114 S. Ct. 155 (1993). The bag containing the pistol was found in Privett's trunk. Normally, police officers need a warrant to search a person's trunk. However, the courts have long recognized an exception to the warrant requirement for so-called "inventory searches" of automobiles. *United States v. Andrews*, 22 F.3d 1328, 1333-34 (5th Cir. 1994). In *Andrews*, this Court explained the inventory search exception as follows:

> When a car is impounded, the police generally inventory its contents to protect the owner's property while it is in police custody, to protect the police from claims of lost or stolen property, and to protect the police and the public from potential danger. Inventory searches are excepted from the warrant requirement because they serve these "caretaking" purposes, and because they are not designed to uncover evidence of criminal activity. . . .

*Andrews*, 22 F.3d at 1334 (citations omitted).

For a search to fall within the inventory search exception, it must be performed according to standard regulations and procedures, consistent with the proper purpose of a noninvestigative inventory search. *See United States v. Gallo*, 927 F.2d 815, 819 (5th Cir. 1991). The United States contends that the inventory search was performed pursuant to standard regulations and procedures. In

3

support of its contention, the government introduced the testimony of Trooper Rimbauch, who testified that the DPS had a departmental policy of conducting inventory searches after a driver of a vehicle was arrested.

Privett argues that the inventory search in fact did not comply with DPS standard regulations and procedures because the had offered to pay to have his car towed to his home. Under Texas law, an automobile may be impounded if the driver has been removed from it and placed under arrest and there is no other reasonable alternative available to ensure the protection of the vehicle. *See, e.g.*, *Smyth v. State*, 634 S.W.2d 721 (Tex. Crim. App. 1982). Privett argues that, because towing the vehicle to his home was a reasonable alternative to impounding his vehicle, it should not have been impounded, and no inventory search should have been conducted. However, the district court found that the problem of security of the contents is the same whether the contents were inventoried prior to delivery of the conveyance to a third-party wrecker driver or occupant of the vehicle. Thus, the district court found, the police could have permissibly conducted an inventory search even if the car was towed to Privett's home. This finding of fact is reviewed only for clear error, and we will view all of the evidence in the light most favorable to the government. *United States v. Ponce*, 8 F.3d 989, 995 (5th Cir. 1993). The district court's finding was not clearly erroneous; it was based on the evidence presented by the government at the supression hearing. Therefore, we accept the finding, and hold that the search fell

4

under the inventory exception to the Fourth Amendment's warrant requirement.

## III.

## SUFFICIENCY OF THE EVIDENCE

Privett challenges the sufficiency of the evidence against him on two grounds. First, that the government failed to prove that he knew that the pistol had been in interstate commerce. Second, that there was insufficient evidence to show that the pistol was in or affected interstate commerce.

Privett's first argument is that the government was required to prove that he knew that the pistol he possessed was in or affected interstate commerce. Whether such a *mens rea* requirement exists is a question of law, which we review *de novo*. In response to this argument, the government simply cites *United States v. Dancy*, 861 F.2d 77, 81 (5th Cir. 1988), which held that the government need not prove that a defendant knew that the firearm had an interstate nexus. Privett, citing several Supreme Court and Fifth Circuit cases,[1] contends that *Dancy* is no longer valid law. None of the cases cited by Privett support this proposition. In fact, the Fourth Circuit recently held, en banc, that there is no *mens rea* requirement as to the interstate commerce element of the

---

[1]Privett cited the following cases: United States v. X-Citement Video, Inc., 115 S. Ct. 464 (1994); Staples v. United States, 114 S. Ct. 1793 (1994); United States v. Hooker, 997 F.2d 67 (5th Cir. 1993); United States v. Langley, No. 93-5219, 1994 WL 510394 (4th Cir. September 23, 1994), *reversed*, 1995 WL 476634 (1995)(en banc); United States v. Anderson, 885 F.2d 1248 (5th Cir. 1989). However, the only case on point is *Langley*, a case in which the Fourth Circuit, sitting en banc, held that there was no *mens rea* requirement as to the interstate commerce element.

charged crime. *See United States v. Langley*, No. 93-5219, 1995 WL 476634 (4th Cir. August 14, 1995)(en banc). We follow the Fourth Circuit's view that *Dancy* is still good law, and hold that the government does not have to prove that a felon knew a firearm was in or affected interstate commerce to convict under 18 U.S.C. § 922(g)(1).

In response to Privett's second challenge, the government argues that the testimony of Rimbauch established that an interstate nexus to the firearm existed between California and Texas. Proof of the interstate nexus to the firearm may be based upon expert testimony by a law enforcement officer. *United States v. Wallace*, 889 F.2d 580, 583-84 (5th Cir. 1989). Thus, Rimbauch's testimony that the firearm was manufactured in California is sufficient to uphold the jury's finding that there was an interstate nexus.

IV.

EXCLUSION OF EVIDENCE CONCERNING PETRICK

Privett also complains of the district court's exclusion of certain evidence regarding Petrick. He first complains that the district court refused to allow him to introduce affidavits Petrick filed in another case. Petrick was charged with aggravated robbery during the time the ATF discussed his possible cooperation in the instant case. Petrick had been convicted and sentenced to forty-five years for the aggravated robbery offense. On a motion for new trial, Petrick alleged that he was not allowed to present alibi evidence. Attached to his motion was his affidavit and those of a

6

number of witnesses all swearing that Petrick was not in the area during the period alleged in the indictment. His motion for a new trial was granted. The government then elicited his cooperation in the instant case. He entered a guilty plea in the robbery case, and was sentenced to twenty-five years. At trial, Privett sought to introduce these affidavits, contending that they show Petrick's willingness to submit false affidavits and lie under oath. We find no reversible error.

Privett next complains that he was not allowed to introduce documents showing that Petrick had been arrested for a felony in Minnesota. That case was dismissed as part of a plea agreement, which required Petrick to join the Marine Corps. Privett contends that this evidence showed Petrick's ongoing effort and motivation to cut deals with the government.

Third, Privett contends that he should have been allowed to introduce records showing that Petrick had escaped from confinement a number of times when incarcerated as a juvenile. Privett contended that the escape attempts showed Petrick's "motivation to avoid confinement, therefore, his motivation to work a deal to catch people in this case."

The admission or exclusion of evidence is reviewed under the abuse of discretion standard. *United States v. Davis*, 546 F.2d 583, 592 (5th Cir. 1977). Further, even if this Court determines that the exclusion of the evidence was erroneous, the error is then evaluated for harmlessness. *United States v. Scott*, 678 F.2d 606,

7

612 (5th Cir.), *cert. denied*, 459 U.S. 972 (1982). In this case, Privett failed to show that the district court abused its discretion in excluding the proffered evidence. First, Privett failed to show that Petrick submitted false affidavits. The fact that Petrick entered into a plea agreement does not necessarily mean that the affidavits were false. Thus, the district court did not abuse its discretion in excluding that evidence. Second, the district court did not err in excluding the other evidence. At best, such evidence could be considered cumulative and marginally relevant; it simply showed that Petrick did not like jail. Because Privett was allowed to present other evidence that established the fact that Petrick was cooperating with the government in exchange for a more lenient sentence, the district court did not err in excluding Privett's proffered evidence.

V.

EVIDENCE OF PRIVETT'S PRIOR FELONY CONVICTIONS

In his final point of error, Privett complains that the government was allowed to elicit testimony regarding his eight prior felony convictions. Prior to trial, Privett stipulated to being convicted of a felony, one of the elements of the crime with which he was charged. He then objected to the government introducing evidence of his felony convictions. All of these convictions occurred more than ten years prior to the trial, which normally would make them presumptively inadmissible as impeachment evidence. *See* FED. R. EVID. 609(b); *United States v. Cathey*, 591 F.2d 268, 275 (5th Cir. 1979). The government argues that the

8

evidence was admissible to dispel the illusion manufactured by Privett that he was a well-intentioned grandfatherly individual who was duped by a manipulative con artist.

While evidence of remote convictions is sometimes admissible to rebut an entrapment defense, the evidence submitted by the government in this case was too remote. The crimes for which Privett had been convicted—burglary, theft, escape and aggravated robbery—are not particularly relevant to show that Privett was predisposed to carrying a gun, or to delivering a gun to other persons for use in robberies. Instead, the convictions simply show that Privett had a general criminal disposition. The prejudicial effect of such evidence greatly outweighs any probative value it may have. Accordingly, we hold that the district court abused its discretion in admitting such evidence. A review of the record, however, establishes that this error was harmless. The government presented overwhelming evidence of Privett's guilt. Privett stipulated to being a felon, he possessed a pistol, and he admitted that he intended to deliver the pistol to Petrick. Thus, the district court's error was harmless.

VI.

CONCLUSION

Finding no harmful error, we AFFIRM.

AFFIRMED.