# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 21, 2011

No. 10-10148

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

SKILAR WHITTNEY BUTLER

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:09-cr-00053-J-BB-ALL

Before DAVIS, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Skilar Whittney Butler ("Butler") appeals his guilty plea conviction of being a dishonorable dischargee in possession of firearms. We determine that the Government was not required to prove, as an element of 18 U.S.C. § 922(g), that Butler knew he had been dishonorably discharged from the Air Force at the time of the offense. We also hold that Butler's discharge was effective when his DD-214 was ready for delivery. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10148

### FACTS & PROCEEDINGS

Butler was charged with two counts of being a dishonorable dischargee in possession of firearms in violation of 18 U.S.C. §§ 922(g)(6) and 924(a)(2) (Counts Two and Four), two counts of being a felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Counts One and Three), and one count of wearing an Armed Forces uniform without authority in violation of 18 U.S.C. § 702 (Count Five). Pursuant to a conditional guilty plea agreement ("plea agreement"), Butler pled guilty to Count Two of the indictment and the Government agreed to dismiss the remaining counts. The plea agreement reserved Butler's right to appeal the portion of the district court's denial of his Motion to Dismiss related to the question of whether § 922(g) has a *mens rea* requirement as to prohibited status.

An Air Force court martial convicted Butler of theft of government property in December 2007, sentenced him to three years of confinement, and ordered his dishonorable discharge from the military. Butler appealed this conviction and sentence. After Butler was paroled and released from confinement on September 11, 2008, he returned to his home and secured civilian employment. At that time he was on appellate leave status pending final dishonorable discharge from the military.

On February 2, 2009, the final forum for review of Butler's sentence, the Court of Appeals for the Armed Forces, denied Butler's petition for review. A DD-214 certificate of release from the U.S. Air Force ("DD-214") was issued for Butler on March 6, 2009. This DD-214 was not sent to Butler because the Air Force incorrectly believed it did not have a valid mailing address for him. On August 5, 2009, Butler's civilian employer informed police that Butler was carrying firearms and wearing a military uniform. Acting on this report, the next day Federal Bureau of Investigation agents went to Butler's workplace. There, Butler admitted that he was armed with a .40-caliber pistol. He

No. 10-10148

explained that he had not received his DD-214 and was thus unaware of a bar to his firearms possession. On August 10, 2009, agents informed Butler that he was prohibited from carrying or owning a firearm because of his dishonorable discharge from the military. Butler then turned over six additional firearms to the agents. The agents arrested Butler.

After Butler pled guilty to the Count Two charge of possession of firearms in violation of § 922(g), the court sentenced Butler to thirty-seven months of imprisonment and three years of supervised release. This appeal followed.

## ANALYSIS

### 1. Whether Butler was actually discharged

Butler argues that the factual basis of the guilty plea was legally insufficient because it did not establish that Butler was actually discharged at the time of the offense. We reject this argument.

Generally, "a challenge to the legal sufficiency of an undisputed factual basis . . . is a straightforward question of law, reviewed *de novo*." *United States v. Kessee*, 185 F. App'x 337, 339 (5th Cir. 2006) (citing *United States v. Marek*, 238 F.3d 310, 314 (5th Cir. 2001) (en banc); *United States v. Reasor*, 418 F.3d 466, 474 (5th Cir. 2005)). But, where a defendant does "not raise a challenge to the adequacy of the factual basis underlying her guilty plea in the district court, either by making her plea conditional pursuant to Rule 11(a)(2) or by objecting thereafter, such as at her sentencing," this court reviews for plain error. *Marek*, 238 F.3d at 315. The outcome of this case is not controlled by the standard of review we use because the Government's argument prevails regardless. We will thus review the sufficiency of the factual basis of the guilty plea *de novo*.[1]

---

[1] It appears that plain error review would otherwise be warranted. Butler voided his objections to the Presentence Report ("PSR") Addendum by stating at the sentencing hearing that he had no objections to the PSR. Moreover, the conditional guilty plea only reserved his right to challenge the district court's denial of his motion to dismiss Counts Two and Four of the indictment for failing to allege Butler knew of his prohibited status under § 922(g). The

No. 10-10148

Applying a *de novo* standard of review, we determine that Butler was discharged at the time of his arrest because his discharge documents were ready for delivery and Butler had notice of his discharge. The statute governing discharge of military personnel, both punitive and administrative, provides:

> A member of an armed force may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty, respectively, and his final pay or a substantial part of that pay, *are ready for delivery* to him or his next of kin or legal representative.

10 U.S.C. § 1168(a) (emphasis added). The general prerequisites for discharge are "delivery of a valid discharge certificate . . . a final accounting of pay made" and "the 'clearing' process required under appropriate service regulations." *United States v. King*, 27 M.J. 327, 329 (C.M.A. 1989); *see also United States v. Howard*, 20 M.J. 353, 354 (C.M.A. 1985) (rejecting Government's argument that the military judiciary retained personal jurisdiction over a personnel member even after the delivery of his discharge certificate, explaining "[d]ischarge is effective upon delivery of the discharge certificate" because that delivery "shows that the transaction is complete, that full rights have been transferred, and that the consideration for the transfer has been fulfilled"). But, the delivery requirement is not absolute. The purpose of the statute's documentation requirement, as recounted in *Hamon v. United States*, is "to ensure adequate administration of veterans' disability claims and to hasten discharge of those uncooperative in the process." 10 Cl. Ct. 681, 683 (Cl. Ct. 1986). Indeed, the Code of Federal Regulations specifically provides, "DD Forms 214 are not intended to have any legal effect on termination of the member's service." 32 C.F.R. § 45.3(b).

Military case law provides several scenarios when discharge can be effected without actual delivery of a DD-214. First, actual delivery is not

---

issue of whether he had not actually been discharged at the time of the offense was not encompassed in this reservation.

No. 10-10148

necessary when the discharge documents are ready for delivery, and the service member had notice of the discharge. *See Earl v. United States*, 27 Fed. Cl. 36, 36 (Fed. Cl. 1996) (finding discharge occurred without delivery of the DD-214 where plaintiff had notice since "following the completion of his appellate review, plaintiff received notification at Ft. Leavenworth that execution of his bad conduct discharge had been ordered" and "[t]hat same day, plaintiff received notification that his compensation had been terminated due to the finalization of his case"). Similarly, when a service member's discharge documents are ready for delivery and both parties understand the situation, delivery is not crucial. *See Hamon*, 10 Cl. Ct. at 682, 684 (characterizing situations where there had been a procedural error or where plaintiff was not aware of his status as exceptions to the general rule that physical delivery is not necessary and finding correspondence between Hamon and the Coast Guard regarding procedures for Hamon to receive a DD-214 indicated that Hamon understood his discharged status).

In Butler's case, actual delivery was not necessary to effect Butler's discharge because it is undisputed that the DD-214 was ready for delivery, and Butler could not reasonably have misunderstood his status.[2]  Butler was convicted by general court martial and sentenced to dishonorable discharge from the military nearly two years prior to the date of the instant offense.[3]  A complete forfeiture of his military pay took effect on the date of his sentence. The final forum for appellate review of his conviction had denied his petition for review and affirmed his discharge, more than six months before his firearms

---

[2] The stipulation in the factual basis of the guilty plea that the DD-214 "was issued" indicates that it was ready for delivery.

[3] The court strikes Butler's allegations that are outside the record on appeal, *i.e.* Butler's claim that the Air Force's "Virtual Military Personnel Flight" system reported he was still a service member on August 4, 2009, and that he was eligible for military benefits until September 2009.

possession offense.[4]   Because his final appeal had been denied, he could no longer reasonably believe he had appellate leave status.  This level of notice was nearly equivalent to the notice provided to the plaintiff in *Earl*, in which the soldier was notified "that execution of his bad conduct discharge had been ordered" and "that his compensation had been terminated due to the finalization of his case."  27 Fed. Cl. at 36.  In light of Butler's notice and understanding of his status, an administrative delivery problem should not have kept Butler on duty indefinitely.

We disagree with Butler's argument that knowledge of the *date* of his discharge was necessary.  The language of the statute does not require actual delivery, and legislative history reveals that the purpose of the statute is to ease the military's administrative burden associated with discharges.  Hinging Butler's status on whether he knew the exact date on which his DD-214 was issued would be inconsistent with the text and purpose of the statute.  Even in cases where the service members had knowledge of their dates of discharge, this awareness was coincidental, and not paramount, to the courts' decisions.  *See United States v. Harmon*, 63 M.J. 98, 102 (C.A.A.F. 2006) ("The DD Form 214 in conjunction with the NAVMC 11060 Form, clearly indicated the command's intent to discharge Appellant at 2359 hours on May 17, 2001."); *Hamon*, 10 Cl. Ct. 681, 684 (the Coast Guard and the plaintiff had agreed upon a date of discharge).

---

[4] Though the record does not specifically provide that Butler received notice of the denial, the rejection of his appeal was publicly available. *See United States v. Butler*, No. 09-0086/AF, 67 M.J. 254 (Feb. 2, 2009).

No. 10-10148

## 2. Whether a § 922(g)(6) offense has a knowledge element

We review the indictment's sufficiency *de novo*.[5]  *See United States v. Dentler*, 492 F.3d 306, 309 (5th Cir. 2007) ("A challenge to the sufficiency of the indictment is reviewed *de novo*."); *United States v. Privett*, 68 F.3d 101, 104 (5th Cir. 1995) ("Whether . . . a *mens rea* requirement exists is a question of law, which we review *de novo*.").  We reject Butler's argument that the indictment was insufficient.

Section 922(g) provides:

It shall be unlawful for any person [with a prohibited status] to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The subsections of § 922(g) list the nine classes of prohibited status under which people cannot possess firearms: felons (§ 922(g)(1)), fugitives from justice (§ 922(g)(2)), unlawful users of controlled substances (§ 922(g)(3)), persons committed to a mental institution (§ 922(g)(4)), illegal aliens (§ 922(g)(5)), dishonorable dischargees (§ 922(g)(6)), those who have renounced their U.S. citizenship (§ 922(g)(7)), those subject to certain domestic violence restraining orders (§ 922(g)(8)), and those convicted of a misdemeanor crime of domestic violence (§ 922(g)(9)).  This statute consolidated an assortment of former firearm laws which, like this statute, contained no *mens rea* element.  *See United States v. Dancy*, 861 F.2d 77, 81 (5th Cir. 1988) (citing Firearms Owners' Protection Act ("FOPA"), Pub. L. No. 99-308, § 102(6)(D), 100 Stat. 449, 452 (1986); H.R. Rep. No. 99-495).  "[W]hen Congress amended § 922 in 1986, it also amended

---

[5] As discussed above, Butler reserved his right to appeal this issue, and thus *de novo* review applies.

No. 10-10148

18 U.S.C. § 924, the penalty provision applicable to § 922," to punish violations of § 922(g) only if they are committed "knowingly," however.[6] *Id.*

This court has held that the Government need not prove a defendant's knowledge of his status as a felon to establish a violation of § 922(g)(1). *See id.* Other circuits have likewise held there is no *mens rea* requirement as to prohibited status under other portions of § 922(g). *See United States v. Ballentine*, 4 F.3d 504, 506 (7th Cir. 1993) (discussing status of fugitive from justice under § 922(g)(2)); *United States v. Montero-Camargo*, 177 F.3d 1113, 1120 (discussing status of illegal alien under § 922(g)(5)), *opinion withdrawn*, 192 F.3d 946 (9th Cir. 1999), *reinstated by en banc opinion*, 208 F.3d 1122, 1127 n.8 (9th Cir. 2000); *United States v. Kafka*, 222 F.3d 1129, 1131-33 (9th Cir. 2000) (discussing status of subject to a restraining order under § 922(g)(8)); *United States v. Hutzell*, 217 F.3d 966, 967-68 (8th Cir. 2000) (discussing status of convicted of a misdemeanor crime of domestic violence under § 922(g)(9)); *United States v. Hancock*, 231 F.3d 557, 562-63 (9th Cir. 2000) (same). No court, post-FOPA, has held that a defendant must know of his prohibited status under § 922(g).

This court's holding in *Dancy*, that the defendant need not know of his prohibited status to violate § 922(g)(1), persuades us that § 922(g)(6) does not require it either. The two subsections have parallel language, and it would be illogical to impose a *mens rea* requirement on only one of the subsections. *See Dancy*, 861 F.2d 77. In *Dancy*, the court looked to the legislative history of § 922(g) and the applicable penalty provision, § 924(a)(1)(B). The *Dancy* court concluded that Congress intended to incorporate former law into the statute, and that the statute does not require that a felon knew of his prohibited status. *Id.*

---

[6] This *mens rea* requirement has been interpreted to apply only to the act of firearm possession. *See id.*

at 80-82. Butler's argument that his case is distinguishable from *Dancy* because convicted felons presumably know that they have been convicted, whereas Butler was never notified of his dischargee status, fails on two grounds. First, the holding in *Dancy* was based on the legislative history of § 922(g), not on the fact that Dancy had notice of his felon status. *See Dancy*, 861 F.2d at 81. Second, a dischargee does not have significantly less notice of his status than a felon. Like criminal convictions, military discharges entail extensive process, including military sentencing and appellate review procedures. Butler's arguments that statutory construction and grammar rules require the court to find a *mens rea* requirement as to status for § 922(g) are easily rejected. The presumption in favor of *scienter* discussed in *Staples v. United States*, 511 U.S. 600 (1994), and *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), does not apply here because this case involves a different statute and does not entail the risk of subjecting ordinary citizens to criminal prosecution for otherwise innocent conduct. *See United States v. Schmidt*, 487 F.3d 253, 254-55 (5th Cir. 2007). Second, this court has already rejected Butler's argument that the Supreme Court's construction of the law against identity theft in *Flores-Figueroa v. United States*, 129 S. Ct. 1886 (2009), compels us to interpret § 922(g) to have a *mens rea* requirement for prohibited status. *See United States v. Rose*, 587 F.3d 695, 706 (5th Cir. 2009) ("Because *Flores-Figueroa* does not [unequivocally] direct [overruling *Dancy*], we are bound to follow the prior panel opinion in *Dancy*."). Third, *Dancy* held that the legislative history of § 922(g) resolved any ambiguity in the statute, and thus the rule of lenity has no bearing on this case. *See Dancy*, 861 F.2d at 81 ("the rule of lenity . . . has no application here"). Likewise, the doctrine of constitutional avoidance is inapplicable here because this court's decision in *Dancy*, frustrates the contention that there are competing plausible interpretations of the statute. *See id.*

No. 10-10148

## CONCLUSION

For the aforementioned reasons, the judgment of the district court is AFFIRMED.