**Ned Edward HETT, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 19321.**

United States Court of Appeals
Ninth Circuit.

Nov. 18, 1965.

Rehearing Denied Jan. 3, 1966.

Murray B. Guterson, Seattle, Wash.,
for appellant.

Wm. N. Goodwin, U. S. Atty., Thomas Wash., for appellee.

Before CHAMBERS, POPE and KOELSCH, Circuit Judges.

CHAMBERS, Circuit Judge:

Out of a near partnership in crime with a robber named Richard James Young, the defendant-appellant Ned Edward Hett, a young Seattle lawyer, stands convicted of four of five counts of an indictment concerned with Young's zigzagging flights to avoid capture and prosecutions.[1] Young fled to Brazil, but was returned to the United States, where he became the main witness against Hett.

Late in 1962 and early in 1963, Young was involved in four Washington-Oregon robberies as follows:

1. On December 1, 1962, the robbery of a Kirkland (near Seattle, Washington) grocery store—about $2,600 was taken.

2. On January 24, 1963, a robbery of a branch of the United States National Bank in Portland, Oregon, of approximately $55,000.

3. On March 8, 1963, a robbery of the Northgate branch of the Bon Marche Department Store at Seattle of about $40,000.

4. On March 22, 1963, a robbery of a branch of the Seattle-First National Bank of $4,000 to $7,000.

The five counts of the indictment were as follows:

1. That on March 8, 1963, (the evening of the Bon Marche robbery) Hett aided and abetted Young to travel in interstate commerce from Bellevue, Washington,[2] to San Francisco, California, to avoid prosecution for the state crime of robbing the Kirkland grocery store.

2. That on or about March 8, 1963, knowing of Young's commission of the Kirkland robbery, a felony, and Young's flight to avoid prosecution, Hett concealed the fact and did not report it to proper authority.

3. That on or about March 22, 1963, Hett did aid and abet Young to flee[3] from San Francisco to Brazil in interstate and foreign commerce to avoid prosecution in Washington for the Kirkland robbery of December 1, 1962.

4. That on or about March 29, 1963, Hett, knowing that Young had moved in interstate and foreign commerce from San Francisco to Brazil to avoid prosecution for a robbery in Washington, concealed it and did not report it to proper authority.

5. That on or about March 29, 1963, Hett, knowing of Young's offense of flying from Seattle to Brazil to avoid a felony prosecution in Washington, did comfort and assist Young to prevent his apprehension and trial.

In the foregoing counts we see that the flights of counts I and III are specifically ascribed to the first robbery at Kirkland on December 1, 1962.

The jury acquitted Hett on count I and found him guilty on counts II, III, IV and V. Sentence was imposed by the court. The only money fine was on count III. The time sentences on counts II, IV and V were concurrent with and did not exceed the time imposed on count III. Herein we conclude that the conviction on count III should stand. Thus, under Sinclair's case, 279 U.S. 263, we do not reach the other three counts.

There is no doubt of the sufficiency of the evidence to convict Hett of count III if it is a good count. But Hett had and has a number of substantial points.

First, he takes us to the statute, 18 U.S.C. § 1073 (Young's offense), which reads:

"Whoever moves or travels in interstate or foreign commerce with intent * * * to avoid prosecution * * * under the laws of the place

---

1. Much of Young's travel was in preparation to commit more violent crimes.

2. Hett provided the airplane (his) which took Young from Bellevue to San Francisco on the night of March 8.

3. The flight from San Francisco to Brazil was on March 28, 1963.

from which he flees * * * shall be fined not more than $5,000 or imprisoned not more than five years, or both."

■ Under this statute, he says that the actual physical flight must be (that is, must start) from the state from whose prosecution the felon flees. The appellant and the government can find no case squarely on the point. Neither can we. However, we have little trouble in concluding that under the statute one may move (start) from State B to State C and in doing so his intent may be to flee from prosecution in State A, a place from which he had already left. To hold otherwise would be hypercritical and not merely strict construction. Appellant suggests also that the segment from San Francisco to Brazil cannot be segregated; that if it can, a flight by plane across a dozen state lines could constitute a dozen crimes. We think not. This is not a case of a non-stop flight or only a stop-over to catch the next flight. In the latter cases, when they come here, we can rule on how many crimes may be committed in continuous flights. Here there was a pause of several days in the San Francisco area before the departure to Brazil. That pause would be enough, possibly, to make two crimes of flight— one fleeing into San Francisco and one fleeing out. Or the trip to San Francisco could be no crime at all.

■ It is obvious that Young did not commit his part of the crime of count III in the State of Washington. So how was Hett triable in the district court in the State of Washington? It is because Hett's aiding and abetting activities, quite intricate and extensive, were performed mainly in the State of Washington. Thus, the Washington district court had jurisdiction and venue.

■ Also, Hett has a rather appealing point built around the Mortensen case, Mortensen v. United States, 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331, which involved the vacation trip on which the house proprietors took the prostitutes from Grand Island, Nebraska, to Salt Lake City and back to Grand Island. The prosecutor there reasoned that the trip back to Grand Island was an immoral thing within the Mann Act. But the Supreme Court held that the dominant motive must be an illegal one. Here Hett says the jury should have been instructed that to convict it must be found that the dominant purpose of the flight from San Francisco to Brazil was to flee from the Kirkland robbery. (Hett thinks this was not so because the Kirkland robbery was the oldest; Young repeatedly thereafter crossed back into Washington and, furthermore, Kirkland was the smallest of the four robberies and involved only about two per cent of the loot.) We think it might be stretching a point to say Young's motive, dominating all others, was to flee from posecution on the Kirkland crime. But the jury was instructed it was enough if a (one) dominant motive was to flee from prosecution on the Kirkland crime. Obviously, he was fleeing from the four crimes he had committed— a package of his own creation. Each crime piled on the next would increase the probability of prosecution on one or more. And Young and Hett would know it might be any one of them. Often, crime B gives the impetus to prosecute stoutly, but crime A may be chosen as the first prosecution because it is more readily provable. A man with a previous criminal record, such as Young had, would know this. The argument of Hett was a good one to make to the jury and he lost it. It is not a good one against the court's instruction saying that "a dominant motive" was enough.

Mortensen must be read in the light of its facts. There was a case of a good motive and of a possible illegal one. It would be quite correct with a choice of only two motives, one good and one bad, to say to the jury that the bad one had to be the dominant one. But here Young's course at the time seems to have been devoid of anything that involved something good like the benign one of giving the Nebraska girls in Mortensen a vacation.

Hett also urges that he had an attorney-client relationship which prevented him from reporting on Young's activities as charged in counts II and IV. And he offered to prove this by another attorney (this was not permitted) whom he brought to court as an expert. But we need not examine these counts because any sentence thereunder is within the sentence of count III.

■ Objection is made to the introduction of one document sent by Hett to Young. It is asserted there was no adequate foundation. The record indicates otherwise. Then it is said it invaded the attorney-client relationship. Certainly it was not a confidence of the client to the lawyer. True, we have held that an attorney may assert his client's privilege,[4] but here, Young, very much present as a government witness, was asserting no privilege of attorney and client. Further, it was a communication concerning an illegal activity which, when found, is not ordinarily blessed with a claim of privilege.

■■ The key government witnesses implicating Hett were Young, as indicated, and Young's confederate, Tichenor. The two testified extensively without reservation on direct examination. Then on cross-examination each testified for a while and then claimed privilege against self-incrimination. The privilege was allowed. The court refused to strike the direct testimony. Hett says the privilege had been waived but if not the direct testimony should have been stricken. The argument is quite attractive, but our examination of the record does not sustain it. We think the record does show that the claim of privilege was a valid one, especially since the intervening decision of Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed. 2d 678, holding one's privilege is not limited to protecting one against federal prosecution. The question of waiver by

Tichenor and Young is a close one. But the questions apparently sought answers which primarily concerned count I—on which Hett was acquitted.[5] Also, it is difficult to perceive how the answers Hett was seeking could have helped him. On the record, on the claim of waiver of privilege and the related question of striking, we find no error.

Appellant has objected to comment of the court through a question put to a witness. We find the comment unobjectionable. Further, it does not concern count III.

We find that Hett was properly convicted. The judgment is affirmed.

---

4. See United States v. Judson, 9 Cir., 322 F.2d 460. We have not held that an attorney may invoke his client's privilege when the client (here, ex-client) is standing out in the hall near the courtroom.

5. See Blassingame v. United States, 9 Cir., 254 F.2d 309.