**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Richard John SPILLANE, Defendant–Appellant.**

No. 89–5490.

United States Court of Appeals, Fourth Circuit.

Argued June 8, 1990.

Decided Sept. 10, 1990.

Rehearing and Rehearing In Banc Denied Oct. 23, 1990.

Clarence Freeman Stanback, Jr., Arlington, Va., for defendant-appellant.

Marcus John Davis, Sp. Asst. U.S. Atty., argued (Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.

Before RUSSELL and MURNAGHAN, Circuit Judges, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.

PER CURIAM:

Following a trial by jury, the appellant, Richard John Spillane, was convicted on thirteen counts of violating the Gun Control Act of 1968. 18 U.S.C. §§ 921 *et seq.* Specifically, the appellant was convicted on six counts of making false statements to a licensed dealer in firearms in connection with the purchase of six firearms, a violation of 18 U.S.C. § 922(a)(6); and seven counts of receiving and possessing firearms shipped interstate while being a fugitive from justice, a violation of 18 U.S.C. § 922(g)(2). Upon conviction, the appellant was sentenced pursuant to the federal sentencing guidelines to a term of 14 months imprisonment on each count, to be served concurrently, and a $1,000 fine. We affirm.

I.

The appellant's history of petty criminal offenses is well documented in the record. In September of 1985, he was arrested in New York City after he smashed the window of a car driven by a person he believed to be fleeing from the scene of an accident. Between September 1985 and May 1986 the criminal case against the appellant was continued at the request of the prosecution twelve times. Finally, Spillane was advised by the court that should he make restitution in the amount of $350, a plea of guilty to the reduced charge of disorderly conduct would be accepted. The case was then again continued until September 15, 1986, giving the appellant ample time to comply.

Unfortunately, the appellant failed to make restitution and he was again summoned to appear. This summons was sent to an address in Summit, New Jersey, given by the defendant as that of his home. Turning a relatively minor offense into one engendering a more serious magnitude, the appellant twice failed to appear and a bench warrant for his arrest was issued.

Apparently unimpressed by the seriousness of the charges pending against him, the appellant was again arrested in New York City in December of 1987, and charged with disorderly conduct. Two days later, he was released on his own

recognizance and a court date of December 16, 1987, was set. At the time of this second arrest, no action was taken regarding the outstanding bench warrant issued in the earlier case. Manifesting again his now well documented disdain for the authority of the New York judiciary, the appellant once more failed to appear and a second bench warrant was issued for his arrest.

These warrants for the appellant's arrest remained pending until June 20, 1989, when he voluntarily appeared in New York City court. This appearance was made after the appellant was arrested in the Eastern District of Virginia on the federal charges that gave rise to the instant prosecution. Apparently, between February 20, 1989, and May 25, 1989, the appellant purchased and took into his possession six firearms. These firearms were purchased from four separate but licensed dealers in Virginia. In order that each purchase comport with the rules set forth by the Bureau of Alcohol, Tobacco and Firearms, the appellant completed and signed Bureau Form 4473, falsely certifying that he was not a fugitive from justice.

It was upon these facts that the appellant was convicted of violating the Gun Control Act.

## II.

The dispositive issue for resolution of this appeal is whether or not the appellant was properly convicted of being a fugitive from justice in possession of a firearm.* It is the contention of the appellant that (1) he was unaware of the charges pending against him and could, for purposes of federal prosecution, not be considered a fugitive from justice, and (2) the government failed to introduce evidence that he fled, in any sense of the word, and accordingly evidence of an essential element of the crimes for which he was convicted is absent. We are unpersuaded.

■ We address the appellant's second contention first. The term "fugitive from

justice" is defined in 18 U.S.C. § 921(a)(15) as "any person who has fled from any state to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding." The record clearly reflects that the appellant purposefully stayed away from New York to avoid facing the charges pending against him. Appellant's own testimony, given at trial, removes any doubt about whether or not he knew of the pending charges and whether his failure to appear was deliberate. We find that this alone is enough to support the assertion by the government that the appellant was a "fugitive from justice" as defined by the statute under which he was prosecuted, and accordingly the prosecution has here met its burden of proof.

We are unpersuaded by the argument of the appellant that to meet the requisite burden of proof the prosecution must show that the appellant left New York with the intent to avoid facing the charges pending against him. Admittedly, this assertion is supported by a decision rendered by the Ninth Circuit. *See United States v. Durcan*, 539 F.2d 29 (9th Cir.1976). In *Durcan*, the court held that "[i]n order to establish that [the defendant] was a 'fugitive from justice' within the meaning of section 922(g)(2), an indispensable requisite of the prosecution's proof was that [the defendant] had left [the state where charges against him were pending] with the intent to avoid prosecution." 539 F.2d at 31.

This formulation does not appeal to us. It would exempt from prosecution those who for some collateral reason leave a state in which charges against them are pending, and later decide not to return because they do not wish to face such charges. We can find no logical distinction between the person who leaves to avoid prosecution and the person who, once gone, refuses to return for the same reason, to avoid prosecution. It is this logic that leads us to now disagree with the underdeveloped ruling of *Durcan*. Any person who, knowing that charges are pending, purposely (1) leaves the jurisdiction of pros-

---

* Whether or not the appellant was a fugitive from justice at the time of his arrest is dispositive because his status as a fugitive is a predicate upon which this prosecution is based.

ecution and (2) refuses to answer those charges by way of appearance before the prosecuting tribunal, is a fugitive from justice. It is not necessary that the accused make a furtive exit from the prosecuting jurisdiction.

■ The appellant's well documented failure to answer the charges pending against him in New York City leads to no other conclusion than that he purposefully absented himself in hopes of avoiding prosecution. This we now hold is sufficient evidence of flight and accordingly the appellant was properly charged and convicted of being an 18 U.S.C. § 922 fugitive from justice.

We are further unpersuaded by the appellant's contention that his lack of knowledge of the outstanding arrest warrants pending against him is proof that he did not knowingly violate the Gun Control Act when he certified on a gun purchase form that he was not a fugitive from justice. Certainly the appellant knew that as a consequence of arrest he must face the charges leveled against him. This is confirmed by the fact that on twelve separate occasions the appellant did appear in a New York Court to face charges stemming from his first arrest. The fact that he may not have been aware that his failure to appear led to the issuance of a warrant for his arrest is not an impediment to prosecution under § 922, as the appellant's reckless disregard for the truth satisfies the scienter requirement of this statute. *See United States v. Hester*, 880 F.2d 799, 802 (4th Cir.1989).

These issues decided, we find no merit to any of the further arguments made by the appellant. Accordingly, the judgment of the district court is hereby

AFFIRMED.

MURNAGHAN, Circuit Judge, dissenting:

The panel majority holds that Spillane, who lived quite conspicuously and fled from nowhere, was a "fugitive from justice" under 18 U.S.C. § 922(g)(2) (unlawful for fugitives to receive or possess firearms) because he failed to appear in New York to answer pending criminal charges. As I read the statute, and accepting as valid a sister circuit's evaluation in *United States v. Durcan*, 539 F.2d 29 (9th Cir.1976), a deliberate failure to appear is not enough— evidence either of flight from prosecution or of concealment must be introduced in order to classify a person as a fugitive from justice. Here there has been no showing of flight or concealment; perhaps twelve continuances at the request of the prosecutor suggests the opposite. Flight is a *sine qua non* of being a fugitive. *Tempus fugit!* Furthermore, even if the words of the statute were ambiguous as to their meaning, which they are not, the doctrine of lenity applies when one construes a criminal statute. In short, there is a difference between flight, necessarily involving two distinct points, *i.e.*, where one starts and where one comes to rest, and staying away or failing to return, which well may involve but a single point.

The story of Richard John Spillane begins in Manhattan, where he was arrested for breaking the window of a motor vehicle, which, according to him, was prompted by the driver's attempt to leave the scene of an accident. After posting bail, he appeared in the New York court system on eleven different occasions—each time the prosecutor requested a continuance. During his twelfth appearance, the court reduced the charge against Spillane to disorderly conduct on the condition that Spillane make $350 restitution to the driver.

But restitution was not made and the New York court sent a letter to Spillane's address in New Jersey directing him to appear. When Spillane failed to respond, the court issued a bench warrant for his arrest. Spillane later explained that he thought his bail would cover the restitution; he also said he never received any letter from the court.

Spillane was again arrested in Manhattan on an unrelated charge of disorderly conduct. He was arraigned and released on his own recognizance. The New York court was aware of the outstanding warrant on the earlier case but did not so

inform Spillane. When he failed to appear on the second charge, another bench warrant was issued for Spillane's arrest. A connection of either or both of the charges as a ground for Spillane's departure from New York was never demonstrated. Both of Spillane's parents testified that they were never contacted by New York authorities, even though they lived with their son in Summit, New Jersey, his address of record with the New York authorities.

Over a year later, Spillane, an avid gun collector, purchased a shotgun and five pistols from several licensed gun dealers in northern Virginia. On Form 4473, Spillane answered in the negative as to whether he was a fugitive from justice. He correctly listed his name and address on the form. In July 1989, Spillane was indicted on thirteen counts of federal firearms violations; some of the counts concerned making false statements on Form 4473 because he denied fugitive-from-justice status. Others dealt with possessing firearms as a fugitive from justice.

Spillane went to New York and fully resolved the pending state charges. Nevertheless, he was convicted on the federal firearms offenses in the United States District Court for the Eastern District of Virginia and was sentenced to 14 months imprisonment. His conviction was based on his status as a "fugitive from justice." He has appealed the conviction, claiming that, in order to establish fugitive-from-justice status, evidence must be introduced of flight or concealment.

The panel majority rejects Spillane's position. It holds that a person is a fugitive from justice if he knows of pending charges and, even though his departure from the state asserting the charges was entirely proper and benign, deliberately fails to return to the state to answer for the charges. Judge Russell, writing for the panel, reasons that there is no logical distinction between a person who leaves a state to avoid prosecution, *i.e.*, flees, and one who refuses to return for the same reason.

That, in my opinion, does ducks and drakes with the plain language of the statute. In my view, the distinction is compelled by the statute. Given the clear language of the statute, we simply have no authority to rewrite its text out of a perceived concern for logical consistency, particularly when we are dealing with a penal statute.

The relevant statute defines a "fugitive from justice" as "any person who has *fled* from any State *to avoid* prosecution for a crime." 18 U.S.C. § 921(a)(15) (emphasis added). That definition was included as part of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, tit. 4, § 921(a)(14), 82 Stat. 197 (as amended by the Gun Control Act of 1968, Pub.L. No. 90–618, tit. 1, § 921(a)(15), 82 Stat. 1213). One of the reasons for the Act was to keep firearms away from classes of persons that Congress considered to be potentially dangerous, such as felons and fugitives from justice. *See Barrett v. United States*, 423 U.S. 212, 218, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976); 18 U.S.C. §§ 921(g)(1) and (g)(2).

The definition of "fugitive from justice," accordingly, only embraces those instances where the person has *fled to avoid* prosecution for the crime. That is, there is the requirement of some motion engaged in for the purpose of avoiding prosecution, *i.e.*, fleeing from a jurisdiction.

"To flee" means more than "to depart," for it adds the subjective element motivating the person's departure, namely, avoidance. *See Webster's New Collegiate Dictionary* 344 (1981) (defining "to flee" as "to run away from danger or evil"). In the context of fairy tales, a princess might "flee" from a castle to avoid the clutches of a sinister, ghastly ogre. On the other hand, if the tale tells of her leaving the castle without reference to her motivation, she has not "fled," she has simply "left," or "departed." *A fortiori*, if she has merely stayed away, she has not "fled from."

In the criminal justice context, a fugitive flees from a jurisdiction in order to avoid detection or prosecution. For example, *Black's Law Dictionary* defines "flight from justice" as "[t]he evading of the course of justice by voluntarily withdraw-

ing one's self *in order to avoid* arrest or detention" and "also comprehends continued concealment." *Black's Law Dictionary* 576 (5th ed. 1979) (emphasis added); *see also id.* at 575 ("flee from justice" defined as removing oneself from jurisdiction *with intent to* avoid detection or punishment).

The usage of the term "fled" in 18 U.S.C. § 921(a)(15) is no different. The gun control statute explicitly contemplates an act of departure or concealment undertaken *for the purpose* of avoiding prosecution for a crime. In my view, the statute requires proof that the person left a state *for the purpose* of avoiding a criminal prosecution.

That interpretation is consistent with the construction given to 18 U.S.C. § 1073, a federal criminal statute not at issue here yet very analogous. Appearing in the "Fugitives from Justice" chapter, 18 U.S.C. § 1073 makes it unlawful for a person to move in interstate commerce "to avoid prosecution" for a felony. Courts have construed § 1073 to require that the prosecution prove that avoidance of prosecution was "a dominant purpose" of the interstate travel and have held that a person's mere absence from the state of prosecution following his commission of a crime is not sufficient proof of the crime of being a fugitive. *See, e.g., Hett v. United States,* 353 F.2d 761, 763–64 (9th Cir.1965) (person can be convicted of 18 U.S.C. § 1073 only if a *dominant motive* of interstate travel was to avoid prosecution), *cert. denied,* 384 U.S. 905, 86 S.Ct. 1339, 16 L.Ed.2d 358 (1966); *Barrow v. Owen,* 89 F.2d 476, 478 (5th Cir.1937) (mere absence from state of prosecution is not sufficient proof of violation of fugitive felon act); *Reis v. United States Marshal,* 192 F.Supp. 79, 80–81 (E.D.Pa.1961) (evidence of defendant's interstate travel after commission of crime is insufficient to establish that the defendant left the charging state with intent to avoid prosecution when the record was barren of any evidence relating to her reasons for leaving the state).

Statutes *in pari materia* should be interpreted harmoniously. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987). The fact that prosecution of fugitives from justice under § 1073 requires proof of the subjective motivation for departure should compel us to hold that persons prosecuted for purchasing or possessing firearms while fugitives from justice should be shown to have *fled in order to avoid* a prosecution.

In Spillane's case, proof of the subjective element is missing. And although direct evidence of one's intentions is nearly impossible to adduce, here no evidence supports an inference that Spillane was *"fleeing* from justice." It is a case of a man who, after being arrested in New York, failed to return to the state from his New Jersey residence to resolve the matter. No evidence of flight, concealment, or trickery is found in the record. And while it is true that Spillane did depart from the state of New York, the record shows that he lived in New Jersey and merely returned, quite unexceptionally, to his home in that state. More proof is required as to either flight or concealment before considering Spillane a fugitive from justice.

Significantly, the only two reported cases that appear to interpret the term "fugitive from justice" in 18 U.S.C. § 921(a)(15), the statute at issue here, have reached results consistent with my interpretation. In *United States v. Durcan,* 532 F.2d 29, 31–32 (9th Cir.1976), in circumstances similar to the present case, the Ninth Circuit was presented with the question of whether there was sufficient evidence to support the finding that the defendant was a fugitive from justice under the Gun Control Act of 1968. Although the evidence showed that Durcan had known of an arrest warrant outstanding in the state of Florida and had failed to return to the state to resolve the matter, no evidence had been introduced to show that he either fled from Florida to avoid prosecution or otherwise attempted to conceal himself.

Reasoning that the fugitive classification was directed at flight and did not encompass a failure to return to a state's courts, the Ninth Circuit reversed Durcan's conviction. *Id.* Consistent with the statute's

clear language, the court stated, "An indispensable requisite of the prosecution's proof was that Durcan had left Florida *with the intent* to avoid arrest or prosecution." *Id.* at 31 (emphasis added). In the Ninth Circuit's view, the evidence that Durcan was aware of pending charges and failed to return to Florida to answer for them was simply not enough to make him a fugitive from justice.

The Tenth Circuit employed similar reasoning in *United States v. Mittleider*, 835 F.2d 769 (10th Cir.1987). In *Mittleider*, the court applied *Durcan* in holding that evidence did support the defendant's classification as a fugitive from justice—the defendant had been AWOL from the U.S. Army for over five years and lived under a different name during that time. The Tenth Circuit concluded, despite the sympathy due to the defendant's name, that the evidence of covert activities was sufficient to support the jury's conclusion that the defendant had left the state in order to avoid prosecution. Those two cases are in complete harmony with the statute's language: it must be shown affirmatively that avoidance of prosecution was a dominant motivation behind the defendant's interstate travel.

Even if the statute is not clear on whether evidence of flight is required, as I think it is, at the very least, it is ambiguous. As the Supreme Court recently said, "[W]hen there are two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher only when Congress has spoken in clear and definite language." *McNally v. United States*, 483 U.S. 350, 359–60, 107 S.Ct. 2875, 2881–82, 97 L.Ed.2d 292 (1987). "The principle of strict construction of criminal statutes demands that some determinate limits be established based upon the actual words of the statute." *United States v. Campos–Serrano*, 404 U.S. 293, 299, 92 S.Ct. 471, 475, 30 L.Ed.2d 457 (1971); *see also Williams v. United States*, 458 U.S. 279, 290, 102 S.Ct. 3088, 3094, 73 L.Ed.2d 767 (1982) (applying rule of lenity to criminal statute susceptible to two interpretations).

Here we have a statute with a reasonable interpretation that results in the defendant having done nothing criminal, which, by the way, has been adopted by two circuit courts of appeals. Yet the panel opts for an alternative interpretation that makes his conduct criminal, ignoring the rule of lenity.

All that the panel majority has said of Spillane is that he knew of the pending New York charges and deliberately failed to return to answer for them—no flight, no concealment, no affirmative conduct to avoid prosecution. The evidence was simply insufficient to support a finding that Spillane was a fugitive from justice.

Accordingly, I respectfully dissent.