# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41689

United States Court of Appeals
Fifth Circuit

**FILED**

October 31, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

DARRIN ANTONIO SOZA,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Darrin Antonio Soza pleaded guilty to one count of unlawful possession of firearms with altered and obliterated serial numbers, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). At sentencing, the district court concluded that Soza was a "prohibited person" under 18 U.S.C. § 922(g)(2) and adopted the factual findings of the presentence investigation report ("PSR") regarding Soza's criminal history. Soza's resulting Guidelines range was 108 to 135 months, but the court sentenced him to the applicable statutory maximum of 60 months. On appeal, Soza challenges the sufficiency of the evidence to support (1) the ruling that he was a prohibited person, and (2) his criminal history as reflected in the PSR and adopted by the district

No. 16-41689

court. We affirm the district court's calculation of Soza's criminal history points, but vacate his sentence and remand for resentencing.

## I. FACTS AND PROCEEDINGS

Soza was charged with one count of knowingly possessing firearms—specifically, two AK-47 rifles—"with altered and obliterated serial numbers, that had been shipped and transported in interstate and foreign commerce[.]" He pleaded guilty pursuant to a written plea agreement.

The PSR stated that Soza was a prohibited person at the time he committed the offense and applied a base offense level of 20 under § 2K2.1(a)(4)(B) of the Sentencing Guidelines ("Guidelines" or "U.S.S.G.").[1] The PSR also added four enhancements—each of four levels—for specific offense characteristics under U.S.S.G. § 2K2.1(b). After application of a two-level reduction for acceptance of responsibility, Soza's total offense level was 34.[2]

The PSR noted that Soza had six criminal history points: one for driving under the influence of alcohol in 2008, one for driving while impaired ("DWI") in 2010, one for larceny in 2011, one for DWI in 2012, and two for "committ[ing] the instant offense while on a term of probation." Consequently, Soza's criminal history category was III.[3] In support of these calculations, the PSR

---

[1] U.S. SENTENCING GUIDELINES MANUAL § 2K2.1(a)(4)(B) (U.S. SENTENCING COMM'N 2016). All references to the Guidelines herein are to the 2016 edition, which was applicable in this case.

[2] The officer applied the cross reference in § 2K2.1(c)(1) because she determined that "it [was] reasonably foreseeable that the firearms sold to an individual on behalf of unknown individuals in Reynosa, Tamaulipas, Mexico, would have the potential to facilitate another felony offense of exportation of arms without required validated export license." U.S.S.G. § 2M5.2 assigns a base offense level of 26 for the "exportation of arms . . . without required validated export license." But under § 2K2.1(c), the cross reference applies only "if the resulting offense level is greater than that determined [under § 2K2.1(a) and (b)]." Therefore, Soza's total offense level was 36—the base offense level of 20 under § 2K2.1(a)(4)(B) plus the four 4-level enhancements under § 2K2.1(b).

[3] U.S. SENTENCING GUIDELINES MANUAL ch. 5, pt. A (U.S. SENTENCING COMM'N 2016).

No. 16-41689

attached a page of a North Carolina probation violation warrant for Soza's arrest. This page noted that a "written statement" was provided to the North Carolina court, but no copy of that statement was given to the district court.

With a total offense level of 34, Soza's sentencing range was 188 to 235 months.[4] At the sentencing hearing, the district court granted the government's motion for a third level of reduction for acceptance of responsibility pursuant to § 3E1.1, and also granted Soza's objection to one of the four-level enhancements. That yielded a total offense level of 29 and a sentencing range of 108 to 135 months.[5] The statutory maximum imprisonment was five years, however.[6]

Soza had filed other written objections, including the contention that there was insufficient evidence to support the PSR's determination that he was a prohibited person under § 2K2.1(a)(4)(B). The district court overruled that objection and sentenced Soza to the statutory maximum term of five years imprisonment, to be followed by three years of supervised release.

Soza timely appealed, raising two arguments: (1) The district court erred in applying § 2K2.1(a)(4)(B) because the evidence was insufficient to establish that Soza was a prohibited person; and (2) the district court improperly calculated Soza's criminal history points because the evidence was insufficient to support the 2012 DWI conviction and to show that Soza was on probation when he committed the instant offense.

After Soza filed his opening brief on appeal, the government moved to supplement the record with a copy of the judgment for Soza's 2012 DWI conviction and the full arrest warrant for his probation violation, including a written description of the violations. A single judge of this court granted the

---

[4] *Id.*

[5] *Id.*

[6] 18 U.S.C. § 924(a)(1)(B).

3

No. 16-41689

government's motion, after which Soza filed a motion for panel reconsideration that was denied by a different panel, subject to reconsideration by this panel.

## II. ANALYSIS

## A.    Whether Soza was a "Prohibited Person"

U.S.S.G. § 2K2.1(a)(4)(B) applies a base offense level of 20 if the offense involved a "semiautomatic firearm that is capable of accepting a large capacity magazine" and the defendant was a "prohibited person" at the time he committed the instant offense. The Guidelines contain two definitions of prohibited person that are relevant to this case: (1) per 18 U.S.C. § 922(g)(1), a person "who has been convicted in any court of, [sic] a crime punishable by imprisonment for a term exceeding one year," and (2) per 18 U.S.C. § 922(g)(2), a person "who is a fugitive from justice."[7] Soza maintains that the evidence was insufficient to establish that he was a prohibited person under either definition.

### 1.    Standard of Review

"This court reviews the district court's interpretation and application of the Sentencing Guidelines de novo and its factual findings for clear error."[8] Whether the evidence was sufficient to support a Guidelines enhancement requires a finding of fact which we review for clear error.[9] The government has the burden of demonstrating, by a preponderance of the evidence, the facts that are necessary to support the enhancement.[10] "Failure to object to either the PSR or the district court's sentence," however, "results in review for plain

---

[7] U.S. SENTENCING GUIDELINES MANUAL § 2K2.1 cmt. n.3 (U.S. SENTENCING COMM'N 2016); *see* 18 U.S.C. § 922(g).

[8] *United States v. Olarte-Rojas*, 820 F.3d 798, 801 (5th Cir. 2016).

[9] *United States v. Reyna-Esparza*, 777 F.3d 291, 294 (5th Cir. 2015).

[10] *United States v. Olivares*, 833 F.3d 450, 452 (5th Cir. 2016) (per curiam).

error."[11] "Plain error exists if (1) there is an error, (2) the error is plain, . . . (3) the error affect[s] substantial rights and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."[12]

The parties dispute whether Soza preserved this challenge. "There is '[n]o bright-line rule . . . for determining whether a matter was raised below.'"[13] "[I]f a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court. An argument must be raised to such a degree that the district court has an opportunity to rule on it."[14] "The raising party must present the issue so that it places the opposing party and the court on notice that a new issue is being raised."[15]

In his written objections to the PSR, Soza challenged the base offense level applied under § 2K2.1(a)(4)(B), contending that "no documentation ha[d] been provided by the government in support of the assertion that Mr. Soza was a 'prohibited person' under . . . 18 U.S.C. 922(g)(2)." The probation officer responded in part as follows: "[O]n July 8, 2014, a probation violator's warrant

---

[11] *United States v. Ocana*, 204 F.3d 585, 588 (5th Cir. 2000); *see United States v. Garcia-Perez*, 779 F.3d 278, 281 (5th Cir. 2015) ("When a defendant objects to his sentence on grounds different from those raised on appeal, we review the new arguments raised on appeal for plain error only." (quoting *United States v. Medina-Anicacio*, 325 F.3d 638, 643 (5th Cir. 2003))).

[12] *United States v. Gordon*, 838 F.3d 597, 604 (5th Cir. 2016) (alterations in original) (quoting *United States v. Garcia-Carrillo*, 749 F.3d 376, 378 (5th Cir. 2014) (per curiam)).

[13] *United States v. Brown*, 561 F.3d 420, 435 n.12 (5th Cir. 2009) (alterations in original) (quoting *Castillo v. Cameron Cty.*, 238 F.3d 339, 355 n.21 (5th Cir. 2001)).

[14] *Dallas Gas Partners, L.P. v. Prospect Energy Corp.*, 733 F.3d 148, 157 (5th Cir. 2013) (internal quotation marks and citation omitted); *see also Garcia-Perez*, 779 F.3d at 282 ("The 'objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction.'" (quoting *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009))).

[15] *Kelly v. Foti*, 77 F.3d 819, 823 (5th Cir. 1996) (quoting *Portis v. First Nat'l Bank*, 34 F.3d 325, 331 (5th Cir. 1994)).

was issued for the defendant, and remains active; therefore, the defendant is a fugitive from justice."

> At the sentencing hearing, Soza's attorney raised the following objection:

> [W]e wanted to ask the Court to make a ruling on some of our objections, that the base offense level—and [sic] that he was not a prohibited person. I did ask for some documentation and Probation did provide a warrant with an electronic signature but no judgments, so we're just asking the Court to find whether this was sufficient evidence to find that he was—or to rule that he was a prohibited person.

The sentencing court overruled that objection. Although the court did not specify which definition of prohibited person it applied to Soza, the PSR applied both definitions—(1) a person "who has been convicted in any court of, [sic] a crime punishable by imprisonment for a term exceeding one year," and (2) a person "who is a fugitive from justice"—to conclude that Soza was a prohibited person under U.S.S.G. § 2K2.1(a)(4)(B). The government concedes on appeal, however, that the first definition does not apply to Soza. "The [g]overnment thus relies solely on Soza's 'fugitive from justice' status under § 922(g)(2)."

The government now urges that "the critical question [Soza raises on appeal] boils down to whether the district court clearly erred in finding that Soza was a 'fugitive from justice' under 18 U.S.C. § 922(g)(2)—and thus a prohibited person for purposes of § 2K2.1(a)(4)(B)." Although the government acknowledges that Soza objected "to the district court's general application of U.S.S.G. § 2K2.1(a)(4)(B) on the basis that he was a 'prohibited person[,]'" it states that Soza did not present this particular argument to the district court. The government contends that Soza did not ask the district court to rule on whether he was a fugitive from justice, but instead "merely asked the court to rule whether that single page [of the warrant] constituted sufficient evidence" that Soza was a prohibited person.

6

No. 16-41689

Soza's written objection referred specifically to the paragraph of the PSR that explained that he was a prohibited person because he was a fugitive from justice. Soza's attorney re-urged the challenge during the sentencing hearing. That objection was "sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction."[16] It also "place[d] the [government] and the court on notice" that Soza was objecting to the finding that he was a fugitive from justice and thus a prohibited person under the Guidelines.[17] Soza has therefore preserved this argument for appeal, and we review his challenge for clear error.

### 2.     *Sufficiency of the Evidence*

As noted above, "[t]he [g]overnment . . . relies solely on Soza's 'fugitive from justice' status under § 922(g)(2)." "The term 'fugitive from justice' means any person who has fled from any State to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding."[18] The PSR concluded that Soza is a fugitive from justice because a probation violator's warrant issued in 2014 for a 2012 DWI conviction in North Carolina remains active. Soza counters that, alone, the probation violator's warrant is insufficient to establish that he was a prohibited person "because the warrant does not, by itself, show that Mr. Soza fled the jurisdiction to avoid prosecution[.]" To support its claim that Soza was a fugitive from justice, the government provided the district court with a copy of the relevant order for arrest. That order notes that Soza's probation officer filed a written statement with the North Carolina state court alleging that Soza violated various conditions of his probation. But that written statement was not before the district court, and

---

[16] *Garcia-Perez*, 779 F.3d at 282 (quoting *Neal*, 578 F.3d at 272).

[17] *See Kelly*, 77 F.3d at 823 (quoting *Portis*, 34 F.3d at 331).

[18] 18 U.S.C. § 921(a)(15).

No. 16-41689

the single page of the warrant that was before the court does not describe the conviction underlying Soza's probation or the alleged probation violations.

    a.    Required *Mens Rea* to be a Fugitive from Justice

The parties dispute whether, to be a fugitive from justice, Soza had to have either intent to avoid prosecution (or at least knowledge that he was a fugitive) or know that charges were pending against him. This court has yet to determine whether a defendant must have such intent or knowledge to be a fugitive from justice under 18 U.S.C. § 922(g)(2),[19] and there is a split among other circuits on this issue. The Ninth and Eleventh Circuits have held that, to establish that a defendant is a fugitive from justice, the government must show that the defendant fled with the intent to avoid prosecution.[20] The Fourth and Seventh Circuits, however, have rejected this approach.[21] But these latter two circuits do require that, to qualify as a fugitive from justice, a defendant must have had knowledge that charges against him are pending.[22]

---

[19] *See United States v. Clark*, 89 F. App'x 453, 457–58 (5th Cir. 2004) (per curiam) (recognizing the circuit split but declining to decide the issue because it was waived).

[20] *See United States v. Gonzalez*, 122 F.3d 1383, 1387 (11th Cir. 1997) ("[M]ere absence from the jurisdiction in which a crime occurred does not render the suspect a fugitive from justice; he must be found to have absented himself from the jurisdiction with the intent to avoid prosecution." (quoting *United States v. Fonsesca-Machado*, 53 F.3d 1242, 1243–44 (11th Cir. 1995))); *United States v. Durcan*, 539 F.2d 29, 31 (9th Cir. 1976) ("In order to establish that Durcan was a 'fugitive from justice' within the meaning of section 922(g)(2), an indispensable requisite of the prosecution's proof was that Durcan had left Florida with the intent to avoid arrest or prosecution.").

[21] *See United States v. Ballentine*, 4 F.3d 504, 506 (7th Cir. 1993) ("[K]nowledge of one's status as a 'fugitive' simply is *not* an element of 18 U.S.C. § 922(g)(2)."); *United States v. Spillane*, 913 F.2d 1079, 1081–82 (4th Cir. 1990) (per curiam) ("We are unpersuaded by the argument . . . that to meet the . . . burden of proof the prosecution must show that the appellant left New York with the intent to avoid facing the charges pending against him. . . . It is not necessary that the accused make a furtive exit from the prosecuting jurisdiction.").

[22] *Ballentine*, 4 F.3d at 506 ("[To be a fugitive from justice], a defendant need only know that charges are pending against him, that he has refused to answer to those charges and that he has left the jurisdiction where the charges are pending."); *Spillane*, 913 F.2d at 1081–82 ("Any person who, knowing that charges are pending, purposely (1) leaves the jurisdiction of prosecution and (2) refuses to answer those charges by way of appearance before the prosecuting tribunal, is a fugitive from justice.").

This court has addressed whether other subsections of § 922(g) contain a *mens rea* element. In *United States v. Dancy*, we held that the district court did not err when it failed to instruct the jury on a *mens rea* requirement for conviction under § 922(g)(1), which prohibits persons convicted of crimes punishable by more than one year imprisonment from possessing firearms.[23] The *Dancy* panel explained that, "[l]ike the provisions it supersedes, § 922(g) contains no element of *mens rea*."[24] Similarly, in *United States v. Butler*, this court considered whether § 922(g)(6), which prohibits "dishonorable dischargees" from possessing firearms, has a *mens rea* element.[25] Relying on the analysis in *Dancy*, the *Butler* panel concluded that a conviction under § 922(g)(6) did not require proof of knowledge:

> This court's holding in *Dancy*, that the defendant need not know of his prohibited status to violate § 922(g)(1), persuades us that § 922(g)(6) does not require it either. The two subsections have parallel language, and it would be illogical to impose a *mens rea* requirement on only one of the subsections. In *Dancy*, the court looked to the legislative history of § 922(g) and the applicable penalty provision, § 924(a)(1)(B). The *Dancy* court concluded that Congress intended to incorporate former law into the statute, and that the statute does not require that a felon knew of his prohibited status.[26]

Although these cases imply that all subsections of § 922(g) should be treated alike, there are compelling reasons to distinguish subsection 922(g)(2) from subsections 922(g)(1) and (g)(6) for the purpose of the *mens rea* requirement. These two subsections, like most subsections of § 922(g), are phrased in passive terms that make relevant not a person's conduct or knowledge, but simply what their status is or what has happened to them, such

---

[23] *United States v. Dancy*, 861 F.2d 77, 81–82 (5th Cir. 1988) (per curiam).
[24] *Id.* at 81.
[25] *United States v. Butler*, 637 F.3d 519, 523–24 (5th Cir. 2011) (per curiam).
[26] *Id.* at 524 (citations omitted).

as: any person "who has been convicted in any court" of a felony;[27] any person "who has been adjudicated as a mental defective or who has been committed to a mental institution";[28] any person "who, being an alien . . . has been admitted to the United States under a nonimmigrant visa";[29] or any person "who has been discharged from the Armed Forces under dishonorable conditions[.]"[30] At first blush, § 922(g)(2) appears to follow that same status-based approach, stating that it is unlawful for any person "who is a fugitive from justice" to ship, transport, possess, or receive firearms.[31]

But the definition of fugitive from justice necessarily incorporates intent. Fugitive from justice is defined in § 921 as "any person who has fled from any State to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding."[32] A literal reading of that definition suggests that one cannot be a fugitive from justice without having "fled" a state for the explicit purpose, i.e. with the express intent, of avoiding either prosecution or testimony.

First, the meaning of the word "fled" contemplates a purposeful departure rather than one that merely has the effect of avoiding prosecution or testimony.[33] Second, the use of the word "to" in the infinitive, "to avoid," similarly suggests purposeful action.[34] To the extent that "to" can be read as indicating not only a purpose but also an end or result, the rule of lenity

---

[27] *See* 18 U.S.C. § 922(g)(1).

[28] *Id.* § 922(g)(4).

[29] *Id.* § 922(g)(5)(B).

[30] *Id.* § 922(g)(6).

[31] *Id.* § 922(g)(2).

[32] *Id.* § 921(a)(15).

[33] *See Spillane*, 913 F.2d at 1083–84 (4th Cir. 1990) (Murnaghan, J., dissenting) (citing Webster's New Collegiate Dictionary and Black's Law Dictionary in support of the proposition that "to flee" means to depart for the purpose of avoiding something).

[34] *See To,* MERRIAM-WEBSTER COLLEGIATE DICTIONARY (11th ed. 2003) (defining "to" as "a function word to indicate purpose, intention, tendency, result, or end").

requires that it be construed in favor of the defendant.[35] Thus, while § 922(g)(2) does not itself contain a requirement of knowledge or intent, unlike §§ 922(g)(1) and (g)(6), it incorporates the definition of fugitive from justice in § 921 which, by its plain terms, does require intent.[36]

A distinction can therefore be drawn between having the status or label of fugitive from justice on the one hand and the conduct and intent necessary to obtain that status on the other. By analogy to *Dancy* and *Butler*, a defendant need not have had knowledge of his *status or label* as a fugitive to be guilty under § 922(g)(2) and thus be subject to the enhanced base offense level under U.S.S.G. § 2K2.1(a)(4)(B)(2).[37] Under § 921, however, a defendant cannot be a fugitive from justice without having fled for the intended purpose of avoiding prosecution or testimony.[38]

---

[35] *See Spillane*, 913 F.2d at 1082 (Murnaghan, J., dissenting).

[36] *See Gonzalez*, 122 F.3d at 1387 (suggesting that § 922(g)(2) requires evidence that the defendant "intentionally absented himself—that is, took himself away—from [the prosecuting state] to avoid prosecution there"); *Durcan*, 539 F.2d at 31 ("In order to establish that Durcan was a 'fugitive from justice' within the meaning of section 922(g)(2), an indispensable requisite of the prosecution's proof was that Durcan had left Florida with the intent to avoid arrest or prosecution.").

[37] *Cf. Ballentine*, 4 F.3d at 506 (stating that "knowledge of one's status as a 'fugitive' simply is *not* an element of 18 U.S.C. § 922(g)(2)" but that "'fugitive' status necessarily involves a defendant's knowledge that charges are pending against him").

[38] As a practical matter, the difference between fleeing the state with the intent to avoid charges and fleeing the state knowing that charges are pending (the requirement adopted by the Seventh and Fourth Circuits) would have little impact in most cases. As the Third Circuit recognized in *United States v. Donahue*, intent can be inferred from knowledge. *United States v. Donahue*, 681 F. App'x 171, 173 (3d Cir. 2017), *cert. denied*, No. 16-9418, 2017 WL 2405872 (U.S. Oct. 2, 2017). The primary distinction between an intent standard and a knowledge standard appears to be how each relates to the timing of the decision to leave a state. Under a specific-intent standard, based on a literal reading of § 921(a)(15), the knowledge of the pending charges and the decision to leave a state to avoid those charges would have to be established as of the time that the defendant actually crossed the state line. That standard would not apply to a person who left the state for some other reason and then, with knowledge of pending charges in that state, decided to stay away to avoid those charges. The word "fled" could be read, however, to encompass staying away, so that one who leaves a state for some other purpose but then stays away to avoid prosecution could be considered "fleeing." *See Spillane*, 913 F.2d at 1081 (raising this concern and "find[ing] no logical

No. 16-41689

b.     Evidence Before the District Court

The government did not present sufficient evidence that Soza had such intent. The evidence before the district court consisted of only a July 2014 warrant for Soza's arrest based on unidentified probation violations. That warrant states that the probation officer provided a written statement outlining Soza's alleged probation violations, which was apparently attached to the warrant, but that statement was not in the record before the district court. The single page of the warrant that was before the district court is insufficient to establish intent. Without at least the dates on which the underlying violations occurred and the date Soza left North Carolina, it cannot be inferred that he left—fled—for the purpose of avoiding prosecution.[39]

The government attempts to analogize to *United States v. Donahue*, in which the Third Circuit held, in an unpublished opinion, that "[i]ntent to flee can be established when further prosecution is substantially certain but not already initiated."[40] But that is not the case here: Based solely on the single page of the warrant, the sentencing court would have no information about the timing and nature of the alleged probation violations. Thus, that court could not infer that Soza would have known that prosecution was "substantially certain[.]"[41]

The facts of *Donahue* illuminate this distinction: Authorities found Donahue in possession of "false identification and utility notices under an

---

distinction between the person who leaves to avoid prosecution and the person who, once gone, refuses to return for the same reason").

[39] In fact, this single page of the warrant is unlikely even to establish knowledge of the pending charges. As noted above, the single page gives no information concerning the timing and nature of the probation violations giving rise to the warrant. This lack of information makes it difficult to infer whether Soza could have known that prosecution was "substantially certain" to follow. *See Donahue*, 681 F. App'x at 173.

[40] *Id.*

[41] *See id.*

alias."[42] There are no similar facts in Soza's case. It may be true that a defendant could flee with the intent to avoid prosecution without direct knowledge of an arrest warrant, but the bare fact that a warrant had been issued does not *itself* explain *why* the defendant fled.

c.     Motion to Supplement the Record

The question becomes much closer if the supplemental evidence is considered. On appeal, the government submitted the sworn statement of the North Carolina probation officer indicating that Soza engaged in the following conduct in violation of his conditions of release: (1) failing to attend appointments with probation; (2) failing to make payments towards his court indebtedness; (3) failing to make payment towards his probation supervision fees; (4) being charged with DWI; and (5) failing to obtain a DWI assessment.

Soza contends that, because the government had the burden of production to establish the applicability of any sentencing enhancement, it should be restricted to the evidence that it produced at sentencing and should not be permitted a "second bite at the apple."[43] In *United States v. Dickler*, the Third Circuit stated that "where the government has the burden of production and persuasion as it does on issues like enhancement of the offense level . . . , its case should ordinarily have to stand or fall on the record it makes the first time around."[44] But the court in *Dickler* also "perceive[d] no constitutional or statutory impediment to the district court's providing the government with an additional opportunity to present evidence on remand if it has tendered a

---

[42] *Id.*

[43] Additionally, in a letter pursuant to Federal Rule of Appellate Procedure 28(j), Soza highlighted *United States v. Reynolds*, where this court stated that "we are reluctant" to permit parties to supplement the record on appeal. *United States v. Reynolds*, 2017 WL 3328154, at *4 (5th Cir. Aug. 3, 2017) (unpublished) (per curiam).

[44] *United States v. Dickler*, 64 F.3d 818, 832 (3d Cir. 1995).

persuasive reason why fairness so requires."[45] We follow this prudent approach and will allow the district court on remand to be the first to determine whether to consider the additional evidence.

### 3. *Harmless Error*

The government further contends that any error is harmless.[46] To show that an error in calculating the applicable Guidelines range is harmless, the government must "convincingly demonstrate[] both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing."[47] In other words, "the government 'must show that the [sentence] the district court imposed was not influenced in any way by the erroneous Guideline calculation.'"[48]

> Before imposing sentence, the district court expressed several concerns:
>
> [A]s I was reading through this report, one of the things that struck me is that I didn't see a connection that you had down here in the Valley, and I don't know how you wound up down here. And it is not clear from the report . . . what else you were . . . doing down here, but it did trouble me that you come down here and you purposely engage in this activity. . . . [S]omebody who comes here . . . [,] to almost immediately engage in this criminal conduct, I very frankly wonder whether maybe part of the consideration for coming down here is knowing the kind of opportunities that are present.

That court also indicated that it was troubled by Soza's specific offense conduct:

> [Y]ou seem to be [the] person sort of behind all of this [criminal conduct], and . . . the charge is that you obliterate serial numbers . . . to ensure that these guns are not traced back to you.

---

[45] *Id.*

[46] *See United States v. Ibarra-Luna*, 628 F.3d 712, 713–14 (5th Cir. 2010) (holding that "a sentence may be upheld if an error in the calculation is shown to be harmless").

[47] *Id.* at 714.

[48] *United States v. Hernandez-Montes*, 831 F.3d 284, 295 (5th Cir. 2016) (alteration in original) (quoting *United States v. Ramos*, 739 F.3d 250, 253 (5th Cir. 2014)).

> And maybe you don't have a full understanding of the many problems that we have here and immediately south of the border because of this type of criminal activity, but you must have had some understanding because of the fact that you are purposely obliterating the serial numbers to ensure that [the firearms] don't come back to you, and that is of concern to the Court[.]

The court then reiterated that Soza "purposely engaged . . . in very serious criminal activity that can cause a lot of harm to our community here, as well as to our community on the southern part of the border." The court noted that Soza's Guidelines range was "way above" the 60-month statutory maximum and that the statutory maximum "very frankly . . . trouble[d] [the court] because of all that we have here." It then sentenced Soza to the maximum 60 months imprisonment.

The parties agree that, if he were not a fugitive from justice, making the district court's application of U.S.S.G. § 2K2.1(a)(4)(B) error, Soza's revised offense level would be 23. Because his criminal history category was correct, then, as explained below, his Guidelines range would be 57 to 71 months, significantly less than the 108- to 135-month range for an offense level of 29.[49]

The district court did not state that it would impose the same sentence if its application of § 2K2.1(a)(4)(B) were erroneous.[50] And, although it is true that "[t]he court's imposition of the maximum allowable sentence . . . favors finding any error was harmless,"[51] it is not clear, given the significant disparity

---

[49] U.S. SENTENCING GUIDELINES MANUAL ch. 5, pt. A (U.S. SENTENCING COMM'N 2016).

[50] Although not necessary, such a statement would make it "abundantly clear that [the court] would have imposed this sentence, regardless of whether it improperly calculated the appropriate Guidelines range." *United States v. Sanchez*, 850 F.3d 767, 769–70 (5th Cir. 2017) (per curiam) ("In imposing a 135-month sentence, the district court stated 'to the extent that I erred in the application of the enhancement of plus six, the sentence would still be the same.' This court has held that similar statements during sentencing provide sufficient basis to conclude that any potential error resulting from an improperly calculated Guidelines range is harmless." (citation omitted)).

[51] *United States v. Groce*, 784 F.3d 291, 297 (5th Cir. 2015).

between the two ranges, that "the district court would have imposed the same sentence had it not made the error."[52] The fact that the maximum sentence would be within—as opposed to far below—the correct Guidelines range may or may not have affected the sentencing judge's decision. The record does not clearly demonstrate that Soza's sentence "was not influenced in any way by the erroneous Guideline calculation."[53] We therefore vacate the sentence imposed and remand for resentencing so that the district court may determine, in the first instance, whether the supplemental evidence should be considered and, if so, whether such evidence is sufficient to establish the requisite intent.

## B.    Soza's Criminal History Points

Soza also contends that, "[b]ecause the probation violator's warrant is insufficient for the government to meet its burden for the USSG § 2K2.1(a)(4)(B) enhancement, it was necessarily likewise insufficient evidence for the district court to calculate Mr. Soza's criminal history score." We are convinced that the district court's criminal history calculation was not erroneous.

### 1.    Standard of Review

To repeat, we review the district court's interpretation and application of the Sentencing Guidelines de novo and its factual findings, including those related to the defendant's criminal history, for clear error.[54] "Failure to object to either the PSR or the district court's sentence," however, "results in review for plain error."[55] "Plain error exists if (1) there is an error, (2) the error is

---

[52] *Ibarra-Luna,* 628 F.3d at 714.

[53] *Hernandez-Montes,* 831 F.3d at 295 (quoting *Ramos,* 739 F.3d at 253).

[54] *Olarte-Rojas,* 820 F.3d at 801; *see United States v. Pesina-Arano,* 650 F. App'x 185, 187 (5th Cir. 2016) (per curiam).

[55] *Ocana,* 204 F.3d at 588.

plain, . . . (3) the error affect[s] substantial rights and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."[56]

The parties again dispute whether Soza preserved this challenge. Soza contends that the district court should have assigned only three criminal history points rather than six, thereby placing him in criminal history category II. He argues that the record was insufficient to support the (1) one point assessed in Paragraph 52 of the PSR under U.S.S.G. § 4A1.1(c) for Soza's 2012 DWI conviction, and (2) two points assessed in Paragraph 54 of the PSR under § 4A1.1(d) because he "committed the instant offense while on a term of probation."

Soza did not raise this objection before the district court.[57] In his written objections to the PSR, he "ask[ed] the Court to consider that his criminal history is less serious than others in his same criminal history category" because "[h]e has only misdemeanor convictions in his criminal history." At the sentencing hearing, Soza's attorney reiterated this request: "We're asking the Court to find that his criminal history might be over-represented." At no point did Soza or his counsel object to Paragraphs 52 or 54 in the PSR or challenge Soza's criminal history category or the sufficiency of the evidence to support the criminal history reflected in the PSR.[58] We therefore review this challenge by Soza for plain error.[59]

---

[56] *Gordon*, 838 F.3d at 604 (alterations in original) (quoting *Garcia-Carrillo*, 749 F.3d at 378).

[57] *See Dallas Gas Partners*, 733 F.3d at 157; *Kelly*, 77 F.3d at 823.

[58] For each objection Soza did make to the PSR, he pointed to the specific paragraph to which he was objecting. By contrast, the heading preceding his request that the court consider that his criminal history "might be over-represented" refers to the section of the PSR regarding "factors that may warrant departure."

[59] *See United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005); *Garcia-Perez*, 779 F.3d at 281 (5th Cir. 2015).

## 2.   *Sufficiency of the Evidence*

"The presentence report is considered reliable evidence for sentencing purposes"[60]:

> In making its factual findings for sentencing, a district court may adopt the findings of the PSR without additional inquiry if those facts have an evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information is materially unreliable. The defendant has the burden of showing that the information relied on by the district court in the PSR is materially unreliable.[61]

"Mere objections do not suffice as competent rebuttal evidence."[62] "At sentencing, a district court may not consider a bare arrest record contained in a PSR. However, in the absence of any indication that the information is not reliable, the court can consider specific information provided in the PSR."[63]

Soza has failed to present any rebuttal evidence, to either the district court or this court, to demonstrate that the description of his 2012 conviction or the fact that he was on probation is materially untrue, inaccurate, or unreliable.[64] The district court was therefore free to adopt the factual findings in those paragraphs of the PSR without further explanation.[65] We therefore affirm the district court's calculation of Soza's criminal history points.

---

[60] *United States v. Reasor*, 541 F.3d 366, 369 (5th Cir. 2008) (quoting *United States v. Clark*, 139 F.3d 485, 490 (5th Cir. 1998)).

[61] *United States v. Ford*, 558 F.3d 371, 377 (5th Cir. 2009) (internal quotation marks and citations omitted).

[62] *Olivares*, 833 F.3d at 452 (quoting *United States v. Solis*, 299 F.3d 420, 455 (5th Cir. 2002)).

[63] *United States v. Turcios-Rivera*, 583 F. App'x 375, 376 (5th Cir. 2014) (per curiam) (citing *United States v. Harris*, 702 F.3d 226, 229–31 & n.1 (5th Cir. 2012)).

[64] *Olivares*, 833 F.3d at 452 ("[A]s a general rule, information in the pre-sentence report is presumed reliable and may be adopted by the district court without further inquiry if the defendant fails to demonstrate by competent rebuttal evidence that the information is materially untrue, inaccurate, or unreliable[.]" (quoting *United States v. Carbajal*, 290 F.3d 277, 287 (5th Cir. 2002))).

[65] *Reasor*, 541 F.3d at 369 ("If no relevant affidavits or other evidence is submitted to rebut the information contained in the PSR, the court is free to adopt its findings without

No. 16-41689

### III. CONCLUSION

For the reasons stated above, the district court's calculation of Soza's criminal history points is affirmed, but Soza's sentence is vacated and the case remanded for resentencing in accordance with this opinion.

---

further inquiry or explanation." (quoting *United States v. Jefferson*, 258 F.3d 405, 413 (5th Cir. 2001))).